Kenneth D. OXBORROW,
Petitioner–Appellee/Cross–Appellant,

v.

Kenneth O. EIKENBERRY, Norman
Carlson, Respondents–Appellants/Cross–
Appellees.

C.A. Nos. 87–4440, 88–3522.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 2, 1988.

Decided June 12, 1989.

Stephen L. Farnell, Winston & Cashatt, Spokane, Wash., for petitioner-appellee/cross-appellant.

Theresa L. Fricke, Office of Atty. Gen., Olympia, Wash., for respondents-appellants/cross-appellees.

Before ALARCON and BEEZER, Circuit Judges, and AGUILAR,* District Judge.

AGUILAR, District Judge:

### I.

Appellant Oxborrow pled guilty to four state offenses stemming from his participation in a Ponzi pyramid investment scheme which defrauded approximately 900 to 1,200 investors. After unsuccessfully appealing his sentence to the Washington Supreme Court, Oxborrow filed a habeas corpus petition in the United States District Court for the Eastern District of Washington. The district court held that the admission of information at sentencing did not violate Oxborrow's due process rights, but found that the imposition of consecutive sentences for counts one and two, which were subject to Washington's Sentencing Reform Act ["SRA"], constituted an *ex post facto* application of the sentencing statutes.

Each party appeals from the district court's judgment. We hold that the habeas corpus petition should have been denied in its entirety. We affirm in part and reverse in part.

### II.  FACTUAL BACKGROUND:

In August of 1979, Kenneth Oxborrow began selling commodity investments through the Wheatland Investment Company. Oxborrow promised investors they would receive a return on their investment of two percent per week. Only a small percentage of the money was actually invested in the commodities market, however. Instead Oxborrow diverted the investments to his own use, or used them to pay the promised dividends to earlier investors.

On August 2, 1984, after the dividend checks began to bounce, the Washington State Department of Licensing served a cease and desist order on Kenneth Oxborrow and the Wheatland Investment Company. Undeterred, petitioner Oxborrow accepted "investments" of over $1,000,000.00 in August.

After filing for bankruptcy, Oxborrow voluntarily contacted the federal and state authorities and negotiated a plea bargain. In state court, he pled guilty to four separate counts: count one: willful violation of a cease and desist order; count two: theft in the first degree; count three: fraud in connection with the offer and sale of a security; count four: theft in the first degree.

---

* The Honorable Robert P. Aguilar, United States District Court Northern District of California, sitting by designation.

Oxborrow was charged with having committed counts one and two between August 3, 1984 and August 31, 1984, bringing these crimes within the scope of the SRA which took effect July 1, 1984. Wash.Rev. Code Ann. § 9.94A.905 (1988) [hereinafter "RCW"]. The SRA did not apply to counts 3 and 4.

The avowed purpose of the SRA was to "make the criminal justice system accountable to the public" by structuring sentences without eliminating the discretionary decision-making of the judge. RCW 9.94A.010. The SRA establishes standard, presumptive sentences for all state crimes. However, a court may reach outside the presumptive range and order an "exceptional" sentence "if it finds ... that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2)[1]. The court must set forth its reasons for imposing the exceptional sentence in written findings of fact and conclusions of law. RCW 9.94A.120(3).

Except for particular circumstances not present in Oxborrow's case, RCW 9.94A.400 states that multiple sentences are to be served concurrently and not consecutively. However, RCW 9.94A.120(13) allows for a departure from 9.94A.400 as an exceptional sentence requiring written findings of fact and conclusions of law.

The Washington legislature provided an "illustrative" list of factors for the court to consider in exercising its discretion to impose an exceptional sentence in RCW 9.94A.390—"Departures from the guidelines."[2] Four enumerated circumstances were listed under the title "aggravating circumstances", including:

> The offense was a major economic offense or series of offenses ... [that] involved multiple victims, ...actual monetary loss substantially greater than typical for the offense; ...a high degree of sophistication or planning or occurred over a lengthy period of time; ...[and] [t]he defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the offense.

Former RCW 9.94A.390(2)[3].

This section also suggested sentence enhancement if the offense was a violation of the Uniform Controlled Substances Act, related to trafficking, and "the operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient...." Former RCW 9.94A.390(4)(h). The entire section ended by reiterating that "the above considerations are illustrative only and are not intended to be exclusive reasons for exceptional sentences." Former RCW 9.94A.390.

1. The relevant portions of 9.94A.120 read as follows:

    **9.94A.120 Sentences.**
    When a person is convicted of a felony, the court shall impose punishment as provided in this section.
    (1) Except as authorized in subsections (2) [first time offenders] and (5) [sex offenders] of this section, the court shall impose a sentence within the sentence range for the offense.
    (2) The court may impose a sentence outside the standard sentence range for that offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence.
    (3) Whenever a sentence outside the standard range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law. A sentence outside the standard range shall be a determinate sentence....
    (13) A departure from the standards in RCW 9.94A.400(1) and (2) governing whether sentences are to be served consecutively or concurrently is an exceptional sentence subject to the limitations in subsections (2) and (3) of this section, and may be appealed by the defendant or the state as set forth in RCW 9.94A.210(2) through (6).

2. **RCW 9.94A.390 Departures from the guidelines**

    If the sentencing court finds that an exceptional sentence outside the standard range should be imposed in accordance with RCW 9.94A.120(2), the sentence is subject to review only as provided for in RCW 9.94A.210(4). The following are illustrative factors which the court may consider in the exercise of its discretion to impose an exceptional sentence.

3. RCW 9.94A.390 was rewritten in 1986, redesignating the subsections and subdivisions, and deleting the final paragraph. At the time of Oxborrow's sentencing, the section read as is quoted herein.

Although the presumptive sentence for count one was 0–12 months, and for count two was 0–90 days, the trial court sentenced Oxborrow to 5 years on count one and 10 years on count two.[4] In addition, the court ordered that the sentences be served consecutively. The court justified this exceptional sentence in a written order which noted that the defendant obtained over fifty-five million dollars from over one thousand investors. The investors were spread out over many counties in the state and some were elderly, blind, or pensioners who suffered extreme financial loss and hardship from Oxborrow's pyramid scheme. The court also found that the defendant enjoyed an undeserved, luxurious style of living off the investors' funds.

Although the court did not refer to the SRA, its conclusions of law tracked the language of RCW 9.94A.390 by referring to the scale and sophistication of the economic crimes and the abuse of investors' trust and confidence.

Oxborrow appealed his exceptional sentence to the Washington Supreme Court. The court affirmed the sentence. *State v. Oxborrow*, 106 Wash.2d 525, 723 P.2d 1123 (1986).

Thereafter, Oxborrow filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Washington alleging that 1) the trial court's sentence was based on untrue and unreliable information admitted during the sentencing phase in violation of his due process rights, and 2) at the time of his conviction, the SRA did not allow the imposition of consecutive sentences for economic crimes.

The district court found that the consecutive sentences constituted an *ex post facto* application of the sentencing statutes in violation of Oxborrow's due process rights and granted habeas corpus relief. The district court also found that the sentence was not tainted by unreliable information.

## III. DISCUSSION:

### (A) *Standard of Review.*

We review the grant or denial of a writ of habeas corpus *de novo*. *Weygandt v. DuCharme*, 774 F.2d 1491, 1492 (9th Cir. 1985).

### (B) *The SRA Provided For Consecutive Sentences In 1984.*

On appeal before the Washington Supreme Court, Oxborrow contended that the trial court exceeded its authority under the SRA by imposing consecutive, rather than concurrent sentences. The Washington Supreme Court rejected this argument for two reasons.

First, the court found that the legislature had recognized the possibility of consecutive sentences for economic crimes with aggravated circumstances, when "[t]he operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter...." *Oxborrow*, 106 Wash.2d at 534, 723 P.2d 1123 (quoting former RCW 9.94A.390(4)(h)).

However, this illustrative "aggravating circumstance" was listed as subparagraph (h) under paragraph 4—Uniform Controlled Substances Act—and not as a separate "aggravating circumstance." Nevertheless, the court dismissed, as meritless, the contention that this limited its application to violations of the Uniform Controlled Substances Act. *Oxborrow*, 106 Wash.2d at 535, 723 P.2d 1123. This finding is supported by the official comments to RCW 9.94A.390, which described the listing of this factor as "4(h)" instead of "5" as a scrivener's error.

Both the Commission and the legislature intended for this example of an aggravating factor to apply to any crime, not just for violations of the Uniform Controlled Substances Act ... As these are all illustrative factors only, the intent of

---

**4.** An exceptional sentence can not exceed the maximum term for the offense, which was ten years on each count in this case. RCW 9A.20.-02(b). On counts 3 and 4, Oxborrow received two ten year sentences to run consecutively with each other, but concurrently with counts 1 and 2.

the Legislature should control over such scrivener's error.

*State v. Oxborrow,* 106 Wash.2d at 535, 723 P.2d 1123, (quoting *Implementation Manual,* Washington Sentencing Guidelines Comm'n, § 9.94A.390, Comment (1984)).

■ The Washington Supreme Court must be recognized as the ultimate expositor of its own state law. *Mullaney v. Wilbur,* 421 U.S. 684, 691 n. 11, 95 S.Ct. 1881, 1886 n. 11, 44 L.Ed.2d 508 (1975); *Winters v. New York,* 333 U.S. 507, 514, 68 S.Ct. 665, 669, 92 L.Ed. 840 (1948); *Knapp v. Cardwell,* 667 F.2d 1253, 1260 (9th Cir. 1982). Our deference to the Washington Court is suspended only upon a finding that the court's interpretation is untenable or amounts to a subterfuge to avoid federal review of a constitutional violation. *Knapp v. Cardwell,* 667 F.2d at 1260.

■ In this instance, the state court's application of the illustrative consideration to Oxborrow's case is neither untenable nor a subterfuge. The Washington legislature explicitly counseled that the listings set forth in RCW 9.94A.390 were illustrative and not exhaustive. *See State v. Fisher,* 108 Wash.2d 419, 427–28, 739 P.2d 683 (1987) (aggravating circumstances set forth in RCW 9.94A.390 not exclusive); *State v. Armstrong,* 106 Wash.2d 547, 550, 723 P.2d 1111 (1986); *see also Knapp v. Cardwell,* 667 F.2d at 1260 (interpretation of statute not untenable where statutory language does not preclude use of unlisted factors.) Common sense dictates that a sentencing court, able to draw on aggravating circumstances not mentioned in the statute may take guidance from factors set forth within the statute, albeit referencing a different crime. The concern that a sentence fit the crime in severity is not limited to drug offenses, but is of general concern in fixing any sentence.

Moreover, the fact that the legislature subsequently amended RCW 9.94A.390 to correct the "scrivener's error" does not alter the appropriateness of the sentence in this instance. The legislative amendment clarified the matter, but in no way changed the substantive import of RCW 9.94A.390 as an illustrative listing of aggravating and mitigating circumstances to be considered when imposing an exceptional sentence.

As a second basis for affirming Oxborrow's sentence, the Washington court found that the imposition of consecutive sentences did not depend upon RCW 9.94A.390; rather an exceptional sentence was authorized by RCW 9.94A.120(13). The imposition of a consecutive sentence only required the sentencing court to "provide 'substantial and compelling reasons' for its decision, set forth in written findings of fact and conclusions of law." *Oxborrow,* 106 Wash.2d at 586, 723 P.2d 1123, (quoting RCW 9.94A.120(2)). The sentencing court followed the statutory mandate and justified the sentence in a written order.[5] Nevertheless, Oxborrow condemns the imposition of consecutive sentences under RCW 9.94A.120(13) as an *ex post facto* broadening of the sentencing statute.

■ An unforeseeable, albeit legitimate, construction of a state law by the courts may not be retroactively applied to a defendant. "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue,' it must not be given retroactive effect." *United States v. Walsh,* 770 F.2d 1490, 1492 (9th Cir.1985) (quoting *Bouie v. Columbia,* 378 U.S. 347, 354, 84 S.Ct. 1697, 1703, 12 L.Ed.2d 894 (1964)).

■ The district court found that the language of RCW 9.94A.010 *et seq.,* did not permit consecutive sentences and, specifically, that RCW 9.94A.120(13) did not provide an independent basis for consecutive sentences.

We disagree. RCW 9.94A.120(13) provided for the imposition of consecutive sentences if the sentencing court provided written findings of fact and conclusions of law justifying the exceptional sentence. While the illustrative nature of 9.94A.390

---

5. Because Oxborrow received an exceptional sentence, he was allowed to appeal the sentence. RCW 9.94A.120(13). The supreme court, reviewing the sentence under an abuse of discretion standard, affirmed the sentence and found that the sentencing court adequately justified the sentence in its written order.

would permit consideration of 9.94A.390(4)(h) in economic crimes, the sentencing court properly found several other aggravating circumstances to justify the imposition of the consecutive sentences under RCW 9.94A.120(13). Indeed, the sentencing judge found that Oxborrow's crime was aggravated by all the factors listed under former RCW 9.94A.390(3) for major economic offenses.

The sentencing court's imposition of consecutive sentences, and the supreme court's affirmation of the sentence, were not "unexpected and indefensible" constructions of the statute. *Bouie*, 378 U.S. at 354, 84 S.Ct. at 1703. At the time of Oxborrow's misdeeds, RCW 9.94A.120(13) was on the books. Its plain language clearly envisioned the possibility of consecutive sentences. Indeed, Oxborrow acknowledged the possibility, if not the likelihood, of consecutive sentences in his Statement Of Defendant On Plea Of Guilty. Again at the sentencing hearing, Oxborrow's attorney, apparently attempting to impress on the sentencing judge the magnitude of Oxborrow's voluntary pleas, recognized the potential of a forty year sentence. Both these acknowledgements predated the Washington Supreme Court's decision in *Oxborrow*.

The district court found that these acknowledgements constituted an unacceptable waiver of non-waiveable due process rights. We consider the acknowledgements as further indicia that consecutive sentences were foreseeable for the crime Oxborrow committed.

(C) *The Trial Court Did Not Rely on Inaccurate and Unreliable Information In Sentencing Oxborrow.*

Although a sentencing judge has broad discretion to hear a variety of evidence normally inadmissible during trial, pronouncement of sentence on a foundation "extensively and materially false ... renders the proceeding lacking in due process." *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948).

■ We have developed a two prong test which criminal defendants must meet to show a due process violation. The defendant must show 1) that the challenged information is materially false or unreliable. *Farrow v. United States*, 580 F.2d 1339, 1359 (9th Cir.1978) (en banc); and 2) that the sentencing judge relied, at least in part, on this information. *Id.* at 1359; *United States v. Rachels*, 820 F.2d 325, 328 (9th Cir.1987) (per curiam).

"Where the court does not rely on the challenged information, the sentence will be affirmed regardless of the accuracy of the challenged information." *Rachels*, 820 F.2d at 328 (*citing United States v. Gonzales*, 765 F.2d 1393 (9th Cir.1985), *cert. denied*, 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986)). If the sentencing court states on the record that it excluded certain information from consideration when making the sentencing decision, the reviewing court must take such statements at face value. *Gonzales*, 765 F.2d at 1397; *See* Fed.R.Crim.P. 32(c)(3)(D).

Oxborrow cites three sources of unreliable information used to enhance his sentence: testimony at the sentencing hearing by three witnesses; unsolicited letters from irate investors; and improper inferences of an extravagant lifestyle.

■ Oxborrow was notified one day prior to the sentencing hearing that three witnesses would testify against him, thus allegedly denying him an effective opportunity to cross-examine or to rebut, in violation of his due process rights. The trial judge's explicit statement that the testimony did not influence his sentencing decision precludes a finding of a due process violation, however. *Gonzales*, 765 F.2d at 1397.

■ Oxborrow's assertion of Wash.Super.Ct.Crim.R. 7.1(c), which requires three days notice, as grounds for reversal is misplaced. The Washington Supreme Court found that admission of the testimony did not violate the rule. *Oxborrow*, 106 Wash. 2d at 537, 723 P.2d 1123. In any case, errors of state law do not concern us unless they rise to the level of a constitutional violation.

Over the objections of counsel for Oxborrow, the sentencing judge permitted a number of unsolicited letters from irate inves-

tors to become part of the record. Petitioner objects to the letters as prejudicial and inflammatory although not inaccurate.

The Washington Supreme Court dismissed the trial court's inclusion of the letters as, at most, harmless error since the judge stated that he considered all points of view, including favorable letters. 106 Wash.2d at 537–38, 723 P.2d 1123. The supreme court also found that "it is clear that the trial judge did not rely on the letters to which Oxborrow objects for any material factual allegations found therein, but rather drew upon the presentence reports and the pleadings as the source of his factual findings." *Id.* at 537, 723 P.2d 1123.

Oxborrow has not shown that the letters contained untruths or that the sentencing court impermissibly relied on the letters. Although the court referred to the outrage of investors, such information was available from the pre-sentencing report. Oxborrow has failed to substantiate his claim that the inclusion of the letters in the record violated his due process rights.

Oxborrow objects to the sentencing court's findings that he "enjoyed a luxurious style of living off the funds of the investors," "showed a complete disregard for investors funds to his own personal whims" and "used his confidences and trust to facilitate the commission of the offenses." Oxborrow does not object to the underlying facts, but contends that the court drew impermissible inferences from them.

Where a state court makes reasonable inferences drawn from the evidence, such inferences are presumed correct under 28 U.S.C. § 2254. *See Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983). The sentencing court's inferences were reasonable in light of the fact that a substantial amount of money was diverted from the investors to Oxborrow's personal use.

Finally, Oxborrow argues that the sentencing court improperly drew the inference that his religious beliefs were a sham used to facilitate the commission of the

offenses. Although the Washington Supreme Court referred to Oxborrow's conspicuous show of Christian faith, *Oxborrow,* 106 Wash.2d at 528, 723 P.2d 1123, the sentencing court made no mention of Oxborrow's religious beliefs. Oxborrow makes no credible showing that the trial court's general reference to abusing the trust of investors had anything to do with religion.

CONCLUSION

Washington's Sentencing Reform Act provided for the imposition of consecutive sentences for economic crimes, and the trial court did not rely on untrustworthy information when sentencing Oxborrow.

The judgment of the district court granting habeas corpus relief on a finding that the imposition of consecutive sentences constituted an ex post facto amendment of the Washington criminal statute is REVERSED.

The denial of the plaintiff's petition for habeas corpus based on the district court's finding that the admission of evidence at sentencing did not violate Oxborrow's due process rights is AFFIRMED.