892 F.2d 1045
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Bruce Armand CERNY, Petitioner-Appellant,
v.
Wayne ESTELLE, Respondent-Appellee.
 No. 86-1862.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 12, 1989.
Decided Dec. 15, 1989.
 
 Before JAMES R. BROWNING, CYNTHIA HOLCOMB HALL, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Bruce Cerny was convicted in state court of second degree murder and simple assault. Cerny filed a habeas petition in federal court alleging two constitutional violations. He claims a sixth amendment violation under Bruton v. United States, 391 U.S. 123 (1968). He also claims that the state trial court deprived him of his right to a fair trial by excluding certain evidence. The district court denied Cerny's petition for a writ of habeas corpus and we affirm.
 
 
 3
 * Ricky Caponio, the homicide victim, and Dasy Rutter, his girlfriend, shared a houseboat in Sausalito, California. Caponio was a heroin dealer who agreed to purchase some heroin for Jerilyn Becker, Cerny's girlfriend and codefendant. A fight resulting from this transaction ultimately led to Caponio's death.
 
 
 4
 Cerny moved unsuccessfully to sever his trial from that of Becker's. During their joint trial, the prosecution examined witnesses who testified to statements made by Becker prior to the homicide. The petitioner states in his reply brief,
 
 
 5
 The largest amount of extrajudicial testimony came from Martin Whalen and Carrie Thatcher, concerning talks they testified in having with Jeri Becker the day before the homicide, March 3, 1980, and early morning March 4, 1980. The crux of there [sic] testimony was; Jeri Becker gave Caponio money to bring her some drugs, while she was waiting with Thatcher and Whalen, she became angry because Caponio, the deceased, was takeing [sic] a long time, then she told them she wanted to kill Ricky Caponio, a number of times, and she screamed hystericly [sic] she was going to get a gun and kill Ricky Caponio, (RT 470-473, 519; NR 10).
 
 
 6
 Reply Brief at 1.
 
 
 7
 Cerny complains that this testimony, while admissible against Becker under the admission exception to the hearsay rule, is inadmissible hearsay as to him. On appeal, Cerny argues that the introduction of this hearsay evidence in his trial violated his sixth amendment right to confront adverse witnesses. Cerny cites to Bruton v. United States, 391 U.S. 123 (1968), in support of this contention.
 
 
 8
 Bruton is inapplicable to the facts of this case. In order for Bruton to apply, the extrajudicial statements must "expressly implicat[e]" the petitioner. Id. at 124 n. 1; Richardson v. Marsh, 481 U.S. 200, 208 (1987); United States v. Yarbrough, 852 F.2d 1522, 1537 (9th Cir.) ("[O]nly those statements that 'clearly inculpate' the defendant or are 'powerfully incriminating' implicate the 'Bruton' rule.") (citing Richardson, 481 U.S. at 208), cert. denied, 109 S.Ct. 171 (1988). The "Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." Richardson, 481 U.S. at 208 (footnote omitted).
 
 
 9
 In support of his Bruton argument, Cerny points to the testimony of witnesses Daniel Romero, Martin A. Whalen, Carie Thatcher, Grover Boaz, and Dasy Rutter. In each instance, the trial court provided clear instruction that their testimony was not to be considered in determining Cerny's guilt. Moreover, the extrajudicial statements at issue did not directly or indirectly implicate Cerny. Indeed, Cerny has not even attempted to show that this testimony incriminated him. Cerny merely states that "the extrajudicial testimony[ ] not only increased any considerations of 'intent' in the jurors [sic] minds, but also added 'malice-aforethought' an essential element of appellant's conviction of second degree murder." Consequently, Cerny's Bruton claim is without merit.
 
 
 10
 Cerny also argues for the first time on appeal that the prosecutor essentially destroyed the effect of the trial court's limiting instruction with an improper closing argument. Specifically, Cerny claims that the prosecutor improperly attempted to focus the jury's attention on Becker's statements in considering whether Cerny had the specific intent necessary for a murder conviction. We decline to consider this issue because it was raised for the first time on appeal. See Romain v. Shear, 799 F.2d 1416, 1419 (9th Cir.1986).
 
 II
 
 11
 Pursuant to Cal.Evid.Code § 352 (1965), the state trial court excluded evidence of a 1972 incident wherein Caponio, the homicide victim, shot and killed a burglar in his home. The state concluded that Caponio shot the intruder in self-defense and thus no criminal charges were filed against him. Cerny contends that this evidence was relevant to his claim of self-defense and that the trial court deprived him of his constitutional right to a fair trial under the fifth, sixth, and fourteenth amendments in excluding evidence bearing on this incident.
 
 
 12
 California Evidence Code § 352 provides that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Ordinarily, errors in the application or interpretation of state law do not concern a federal habeas court unless they rise to the level of a constitutional violation. See Oxborrow v. Eikenberry, 877 F.2d 1395 (9th Cir.1989), cert. denied, No. 89-5581 (October 30, 1989); Middleton v. Cupp, 768 F.2d 1083 (9th Cir.1985), cert. denied, 478 U.S. 1021 (1986).
 
 
 13
 The trial court's exclusion of evidence concerning the 1972 incident pursuant to section 352 did not amount to a constitutional violation. The incident is only relevant if Cerny can establish that it was an unjustifiable homicide rather than an act of self-defense. This in turn would have required a time consuming "trial within a trial" to ascertain the events of that evening eight years prior. Moreover, in light of the state's original assessment, it is unlikely Cerny could have established that Caponio acted in any way but in self-defense.[1] Therefore, the trial court did not abuse its discretion, nor did it commit a constitutional error, in concluding that the probative value, if any, of this evidence was substantially outweighed by the likelihood that it would necessitate an undue consumption of time.
 
 
 14
 Cerny's reliance on Evans v. United States, 277 F.2d 354 (D.C.Cir.1960), and United States v. Burks, 470 F.2d 432 (D.C.Cir.1972), cannot withstand analysis. Evans involved "highly relevant" testimony from the decedent's wife that his frequent drinking caused him to act belligerently. Burks involved "vital" testimony from the decedent's wife that he had beaten his child to death and evidence of the decedent's conviction for willfully maltreating a child under 22 D.C.Code § 901 (1967). Clearly, these cases involve evidence that was significantly more probative and did not raise serious concerns about prejudice, jury confusion, or undue consumption of time.
 
 III
 
 15
 The state trial court did not violate Cerny's federal constitutional rights. Consequently, the district court's decision to deny Cerny's petition for a writ of habeas corpus is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Cerny's counsel proffered that he believed Caponio had not acted in self-defense. This proffer is vague and conclusory. It does state that Caponio "made statements indicating his own involvement as the perpetrator of a murder," yet fails to provide the alleged statements. The proffer continues to state that these alleged statements were made to "various persons," yet fails to cite names. There is no allegation that counsel had uncovered an eyewitness to the incident