**Robert Patrick POWELL,**
**Petitioner–Appellee,**

v.

**Kenneth DUCHARME, Superintendent,**
**Washington State Reformatory,**
**Respondent–Appellant.**

No. 92–35427.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1992.

Decided July 9, 1993.

Thornton Wilson, Asst. Atty. Gen., Olympia, WA, for respondent-appellant.

John Midgley, Evergreen Legal Services, Seattle, WA, for petitioner-appellee.

Before: WRIGHT, HUG, and POOLE, Circuit Judges.

HUG, Circuit Judge:

This case involves the issue of whether the State of Washington's retroactive application of a law authorizing the Indeterminate Sentence Review Board to set minimum.terms of incarceration for inmates serving mandatory life sentences is a violation of the Ex Post Facto Clause of the United States Constitution.

I.

In 1975, Robert Patrick Powell was convicted in the State of Washington for first degree murder. Following a jury trial, Powell was sentenced by the trial judge to life imprisonment with the possibility of parole.

At the time Powell was convicted, Washington law required the courts to set the maximum sentence for first degree murder at life imprisonment. Wash.Rev.Code Ann. §§ 9A.32.040, 9.95.010 (West 1988). Under former Washington parole law, an inmate sentenced to life for first degree murder had to serve a mandatory minimum sentence of 20 years, minus time credited for good behavior, before he or she could be considered for parole. Wash.Rev.Code Ann. § 9.95.115 (West 1988) (amended 1989). Once the inmate had served the mandatory minimum term of imprisonment, the inmate had to acquire a certification of meritorious conduct and recommendation for parole from the superintendent of the institution. *Id.* The superintendent exercised absolute discretion in deciding when, and if, a certification would be granted. *See* Wash.Rev.Code Ann. § 9.95.-115 (West 1988) (amended 1989); *Matter of Powell,* 117 Wash.2d 175, 814 P.2d 635, 642 (1991). Only after the superintendent certified an inmate as parolable could the Board of Prison Terms and Paroles (later designated the Indeterminate Sentence Review Board) ("Board") consider that inmate for parole. The Board, like the superintendent, exercised absolute discretion in determining whether it would grant a parole hearing to a particular certified inmate. *See Powell,* 814 P.2d at 638, 641. If the Board decided to grant a parole hearing, it would then consider all the factors pertaining to the inmate's criminal history as well as the inmate's conduct while incarcerated. Under former Washington law, therefore, an inmate serving a life sentence never knew when, or if, he or she would be considered for parole. *See id.* at 640.

In 1989, the Washington legislature passed Substitute House Bill ("SHB") 1457, amending the former parole law. SHB 1457, 1989 Washington Laws, Ch. 259; Wash.Rev.Code Ann. §§ 9.95.009, .013, .115, .116 (West Supp. 1992). SHB 1457 does not change the requirement that persons convicted of first degree murder and sentenced to the mandatory term of life imprisonment serve no less than 20 years, minus time credited for good behavior. Wash.Rev.Code Ann. § 9.95.115 (West 1988 & West Supp.1992). Under the new statute, however, the Board is required to "fix the duration of confinement" for persons committed to the custody of the department of corrections under a mandatory life sentence, for crimes committed before July 1, 1984. *See* Wash.Rev.Code Ann. §§ 9.95.009, .116 (West Supp.1992).

SHB 1457 eliminated the requirement of section 9.95.115 that an inmate obtain a certification from the superintendent before that inmate could be considered by the Board for parole. Under the new statute, the Board must attempt to determine the minimum term an inmate must serve with reference to Washington's Sentencing Reform Act ("SRA"), Wash.Rev.Code Ann. §§ 9.94A.010 *et seq.;* § 9.95.009(2) (West Supp.1992). The Board must also attempt to follow the minimum term recommendations of the sentencing judge and the prosecuting attorney. *Id.* When setting the term of confinement, the Board must consider statements submitted by the sentencing judge or prosecuting attorney concerning the facts of the crime and any other information they possess relative to the convicted person. Wash.Rev.Code Ann. § 9.95.030. The Board must also consider any victim impact statement, and any statement submitted by an investigative law enforcement officer. Wash.Rev.Code Ann. § 9.95.116(2) (West Supp.1992). The Board may depart from the SRA guidelines if it gives written justification for the departure. *See* Wash.Rev.Code Ann. § 9.95.009(2) (West Supp.1992).

The purpose of SHB 1457 is to require the Board to begin setting discretionary minimum terms for persons serving life sentences. At the time of Powell's conviction, "[t]he provisions of RCW 9.95.040, which required the Board to set minimum sentences, were not applied to persons serving mandatory life sentences." *Powell,* 814 P.2d at 640 (footnote omitted). Under SHB 1457, once an inmate serves the discretionary minimum term, that inmate *must* be considered for parole at the expiration of that term. *Powell,* 814 P.2d at 641–42. Under SHB 1457, the Board reviewed Powell's file, conducted a hearing, with Powell present, and set his minimum term of incarceration at 380 months. Powell argues that this is a violation of the Ex Post Facto Clause because it

has effectively moved the earliest date at which he can be considered for parole from 20 years minus good time, to over 30 years minus good time. He contends that retroactive application of the new law has restricted opportunities for earlier release that were previously available to him.

Powell first sought a writ of habeas corpus in the state courts of Washington. Powell alleged that SHB 1457 not only violated the Ex Post Facto Clause, but also contended that the law violated the Equal Protection Clause and violated his rights to due process of law. In a 5 to 4 opinion, the Supreme Court of Washington held that none of Powell's claims were meritorious, and therefore denied his petition. *Id.* at 649–650. The Washington Court briefly discussed and rejected Powell's due process and equal protection arguments, and focused primarily on whether the law violated the Ex Post Facto Clause. The Washington Court found no ex post facto violation because, on the whole, the new law actually benefitted Powell by providing certainty as to when he could be considered for parole. *Id.* at 639–40.

Powell next sought relief from the federal district court. Upon recommendation from the magistrate judge, the district court granted Powell's writ of habeas corpus. The district court, focusing exclusively on the ex post facto question, disagreed with the Washington Supreme Court. The district court held that the Washington Court had greatly overexaggerated the ameliorative effects of SHB 1457. The court found that the new law caused substantial disadvantage to Powell, and held that Powell had been deprived of an opportunity for a parole hearing at the time he had served the mandatory minimum term of incarceration.

■ The State of Washington timely appealed the district court's grant of Powell's writ of habeas corpus. The district court had jurisdiction under 28 U.S.C. § 2254, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's decision to grant or deny a writ of habeas corpus *de novo. Creech v. Arave*, 947 F.2d 873, 876 (9th Cir.1991), *cert. granted,* — U.S. —, 112 S.Ct. 2963, 119 L.Ed.2d 585 (1992).

## II.

■ A state law violates the Ex Post Facto Clause of the United States Constitution if it imposes punishment for an act that was not punishable when committed, or if it increases the amount of punishment beyond that authorized at the time the act was committed. *Weaver v. Graham*, 450 U.S. 24, 28–29, 101 S.Ct. 960, 963, 964, 67 L.Ed.2d 17 (1981). The critical factor in the ex post facto analysis is lack of notice and governmental restraint when a legislature increases punishment beyond what was prescribed when the act was committed. *Id.* at 30, 101 S.Ct. at 965. Although a law may disadvantage a prisoner, it does not violate the Ex Post Facto Clause unless the law is substantive in nature and not merely procedural. *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977).

■ In the present case, both parties agree that SHB 1457 is being retroactively applied, and is a substantive change to former Washington parole law. Our analysis, therefore, is concerned with whether SHB 1457 is, as a whole, ameliorative or disadvantageous to Powell. Washington Supreme Court interpretations of Washington law are binding on this court unless we determine such interpretations to be untenable, or a veiled attempt to avoid review of federal questions. *See Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied,* 493 U.S. 942, 110 S.Ct. 344, 107 L.Ed.2d 332 (1989). However, whether a retrospective state criminal statute ameliorates or worsens conditions imposed by its predecessor is a federal question. *Weaver*, 450 U.S. at 33, 101 S.Ct. at 966.

In *Weaver*, the Supreme Court held that a law restricting an inmate's opportunity for earlier release violated the Ex Post Facto Clause. *Id.* at 33–34, 101 S.Ct. at 966–967. In determining whether the new law is ameliorative or disadvantageous to Powell, we must compare the opportunities available to Powell under the former law with the opportunities available to him under SHB 1457. Only if an opportunity available under the previous law has been restricted or taken away can an argument be made that the new

law is somehow detrimental in its retroactive application.

Powell's argument boils down to an assertion that he has lost the opportunity to be considered for parole at the mandatory minimum term of incarceration. Powell bases this assertion on two different grounds. First, he contends that SHB 1457's requirement that the Board attempt to set the discretionary minimum term within the SRA guidelines makes the likelihood of a parole hearing at the end of the mandatory minimum term extremely remote. Second, Powell argues that the bifurcation of the hearing process, requiring the Board to consider only those factors relating to the crime in setting the minimum term, makes the likelihood of an early hearing even more unlikely.

### A.

Powell argues that under the former statute, Wash.Rev.Code Ann. § 9.95.115 (West 1988) (amended 1989), he could be considered for parole in as early as 20 years minus good time, the expiration of the mandatory minimum sentence. However, under SHB 1457, and the SRA, the possibility of receiving a parole hearing at 20 years, minus good time, is still available, albeit on the very low end of the guideline range. *See Powell,* 117 Wash.2d 175, 814 P.2d at 641 (interpreting Wash.Rev.Code Ann. § 9.94A.310(1)). Powell contends that using the SRA to determine the discretionary minimum term reduces the likelihood of receiving parole at the mandatory minimum term. However, Powell is comparing the "likelihood" of an early parole hearing under SHB 1457 with the former parole law in which it was entirely within the discretion of the superintendent of the institution whether to recommend a parole hearing. Even after a recommendation by the superintendent, it was entirely within the discretion of the Board never to grant a parole hearing at all. Further, Powell ignores the present ability of the Board to depart from the SRA with written justification under SHB 1457.

The opportunity to be considered for parole at the mandatory minimum term of imprisonment is still present under SHB 1457. A comparison of the relative likelihoods of Powell actually receiving a parole hearing under the former law and SHB 1457 is not helpful because, under the former law, it was fully possible for Powell never to have been considered for parole.

### B.

Powell next argues that SHB 1457's requirement that the Board consider only those factors relating to the crime when setting the discretionary minimum term has deprived him of an opportunity to have a parole hearing that considers all factors relating to possible parole. Essentially, Powell is asking the Board to turn a discretionary minimum term hearing into a full parole hearing. These two types of hearings are distinct in nature and function.

The purpose of SHB 1457 was discussed by the Washington Supreme Court in *Powell:*

> Under former RCW 9.95.115, the 20–year time limit (in addition to the superintendent's certification) was merely the starting point, after which the machinery of the parole process could begin to operate. It was the point at which the Board obtained "jurisdiction" of the inmate for purposes of determining parole; the point after which the Board could exercise its virtually unlimited discretion to determine whether to parole the inmate. Under SHB 1457 however, an inmate need not wait 20 years minus good time for the wheels of the parole process to begin turning.

814 P.2d at 641.

SHB 1457 authorizes the Board to set the minimum discretionary term of imprisonment before expiration of the mandatory minimum term. As noted by the Washington Supreme Court, this is a substantial restriction on the discretionary ability of the Board to deny a parole hearing. *See id.* at 641–42. No longer does the possibility exist that an inmate can be forever denied parole. Powell is now guaranteed a parole hearing at the end of the discretionary minimum term. *See id.* at 642–43.

In its reasoning for finding an ex post facto violation, the district court found that the guarantee that Powell will be considered

for parole at 30 years minus good time is also a guarantee that he cannot be considered for parole before then. The district court concluded that Powell has lost an opportunity for release before the end of the discretionary minimum term. However, this does not take into account Wash.Rev.Code Ann. § 9.95.052, entitled "Redetermination and refixing of minimum term of confinement," which states:

> At *any time* after the board .... has determined the minimum term of confinement of any person subject to confinement in a state correctional institution, the board may request the superintendent of such correctional institution to conduct a full review of such person's prospects for rehabilitation and report to the board the facts of such review and the resulting findings. Upon the basis of such report and such other information and investigation that the *board deems appropriate*, the board *may redetermine and refix* such convicted person's minimum term of confinement whether the term was set by the board or the court.

Wash.Rev.Code Ann. § 9.95.052 (West 1988) (emphasis added).

The fact that the Board is able to redetermine Powell's discretionary minimum term at any time, indicates that Powell still retains the opportunity for a parole hearing before the expiration of his discretionary minimum term. If the Board grants an earlier parole hearing, the hearing would be a full hearing in which the Board would consider all parole factors.

As with the previous law, the Board retains discretion as to when or if it will redetermine Powell's minimum term. Whether the "likelihood" of an earlier parole hearing has been diminished is a question that cannot be answered. It is impossible to make a quantitative comparison between SHB 1457, requiring a parole hearing at a certain date, and former section 9.95.115, which left such a determination to the unfettered discretion of both the superintendent of the institution and the Board. To decide that SHB 1457 is more detrimental than the previous law is to assume that we, in 20–20 hindsight, knew the Board would have considered Powell at an

earlier date. Such predictions of how the superintendent or the Board would have exercised their discretion have no basis in law. The fact remains that under SHB 1457 and section 9.95.052, the Board can set, or redetermine, the discretionary minimum term of incarceration at or after the expiration of the mandatory minimum term. Therefore it appears that the same opportunities exist under SHB 1457 as existed under former Washington parole law.

As the Washington Supreme Court emphasized, it *guarantees* him a more *meaningful* parole opportunity:

> The possibility of never even being considered for parole by the Board has been transferred to a certainty of being considered. While SHB 1457 admittedly pushes back the possibility of parole release, its elimination of the superintendent's certification requirement makes the possibility which the inmate does get more determinate and therefore more meaningful.

*Powell*, 814 P.2d at 643.

We conclude that Powell has not been deprived of an opportunity for an earlier parole hearing that existed under the former Washington parole laws. Therefore, SHB 1457 is not a violation of the Ex Post Facto Clause. Further, we agree with the Washington Supreme Court that, in its overall application, SHB 1457 is more ameliorative than detrimental in its retroactive application to Powell. The Board had the power to set the discretionary minimum term at 20 years minus credit for good behavior. The Board retains discretion to redetermine Powell's minimum term under section 9.95.052. As with the former Washington parole law, Powell is subject to the discretion of the Board as to when or if he receives a parole hearing. The difference between the former law and SHB 1457 is that Powell now knows that at the end of 30 years, minus time credited for good behavior, he will be considered for parole.

We conclude that the district court erred in finding a violation of the Ex Post Facto Clause.

### III.

Powell claims that the application of SHB 1457 to him violates the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause prohibits a state from applying a rule of law retroactively in some cases but not others, absent a rational basis for doing so. *See Myers v. Ylst,* 897 F.2d 417, 421 (9th Cir.) (where the petitioner was denied the retroactive benefit of a new rule while others similarly situated were afforded the retroactive benefit, the petitioner's equal protection rights were violated), *cert. denied,* 498 U.S. 879, 111 S.Ct. 212, 112 L.Ed.2d 172 (1990).

Powell argues that SHB 1457 was applied retroactively to him to postpone his earliest opportunity for parole available under the law at the time of his crime, but was not applied to postpone the opportunity for parole of Thompson, whose petition was granted. Powell contends that the granting of Thompson's petition is evidence that SHB 1457 was not applied equally.

Thompson committed murder in the same year as Powell and received the same sentence as Powell. However, Thompson finished his mandatory minimum term before Powell, who first had to serve time on a parole violation charge before serving his sentence for murder. Both Powell and Thompson were subject to the unfettered discretion of the Board and the superintendent prior to the enactment of SHB 1457. The old law authorized the superintendent to choose not to grant any certification to Powell or Thompson. Thompson did receive certification to the Board prior to the enactment of SHB 1457, and thus SHB 1457 could not be applied to him. On the basis of that certification, the Washington court granted Thompson's petition.

The application of SHB 1457 to Powell and not to Thompson is rationally based on the fact that Thompson received certification to the Board prior to the passage of SHB 1457. *See Johnson v. Arizona,* 462 F.2d 1352, 1354 (9th Cir.1972) (changes in the law may be applied retroactively or limitedly retroactively so long as the application has "some rational basis, announced with reasonable precision").

Furthermore, even though Thompson's petition was granted, he remained subject to the discretion of the Board, under the terms of the law in effect before SHB 1457 was passed. Powell also is subject to the discretion of the Board.

Powell fails to show an equal protection violation.

### IV.

Powell also argues that he was denied due process of law because he was not given a hearing before the sentencing judge who issued the updated sentencing recommendation. The updating judge recommended a term of 90 years. The 1975 recommendation was for a term of 20 years.

The Board makes the ultimate sentencing decision. It is directed by statute to consider the updated recommendations, but it is not bound by those. *See In re Irwin,* 110 Wash.2d 175, 751 P.2d 289, 293 (1988) (recommendations are entitled to great weight but the Board has discretion to exercise). In fact, the Board set Powell's minimum term without considering the judge's recommendation. Powell received a hearing before the Board in March 1990. The decision of the Board bears two dates: March 14, 1990, and March 28, 1990. Although the decision states that the Board considered "the adjusted Sentencing Reform Act ranges" and "the judge's and prosecutor's recommendations," the sentencing judge did not submit his updated recommendation until April 11, 1990. The statement in the decision concerning the judge's recommendation is obviously a drafting error because the Board could not have considered the judge's recommendation. Powell suffered no injury from the lack of a hearing before the sentencing judge because the Board did not consider the recommendations or base its decision upon them. Powell has no standing to raise the due process claim.

**REVERSED.**

POOLE, Circuit Judge, dissenting:

Because I believe retroactive application of Washington's new parole scheme violates the Ex Post Facto Clause, I respectfully dissent.

As the majority correctly notes, the critical question in this case is whether the new parole scheme "ameliorates or worsens conditions imposed by its predecessor." *Weaver v. Graham,* 450 U.S. 24, 33, 101 S.Ct. 960, 966, 67 L.Ed.2d 17 (1981). In my opinion, the new scheme unquestionably worsens prisoners' conditions.

In *Weaver,* the Supreme Court held violative of the Ex Post Facto Clause Florida's retroactive application of a statute reducing the "time off for good behavior" prisoners could earn. Despite the fact that there was no way to know that a given prisoner would have earned time off under the old law, the Court found the new law disadvantageous. The disadvantage, it said, lay in a prisoner's "reduced *opportunity* to shorten his time in prison simply through good conduct." 450 U.S. at 33–34, 101 S.Ct. at 967 (emphasis added). *See also Lindsey v. Washington,* 301 U.S. 397, 401–02, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937) (invalidating on ex post facto grounds retroactive application of a law requiring felons to be sentenced at—rather than at or below—statutory maximums: "It is plainly to the substantial disadvantage of petitioners to be deprived of all *opportunity* to receive" a sentence below the statutory maximum) (emphasis added).

Similarly here. Powell has lost the opportunity to have a hearing after 20 years. It is little consolation that Powell need only wait another 10 years in prison, for a total of 30 years' imprisonment, to be guaranteed a parole hearing. What Powell has lost is the possibility of receiving a hearing 10 years sooner.

To be sure, Powell was not *guaranteed* a hearing in 20 years even under the old system, because a hearing was only available if the prison superintendent certified that Powell had behaved well and deserved one. But Powell (and other prisoners) had a chance under the old system. Those who behaved in an exemplary fashion for 20 years could hope that the superintendent would deem them entitled to a hearing. True, the superintendent's decision was wholly discretionary; but we must assume that for at least some exemplary prisoners, that discretion was favorably exercised.

The majority tries to get around this evident disadvantage by citing Washington Revised Code section 9.95.052, which it reads as permitting the parole board to override its original minimum term determination. *See* Majority Op. at 714–16. But this provision by no means rectifies the disadvantages of the new law.

Under the new law, once the board sets a prisoner's minimum term of imprisonment, its decision is ordinarily not revisited. That is the point of the law—to allow the board to determine at the outset how many years will go by before it will consider a prisoner's parole eligibility. The reexamination contemplated in section 9.95.052 is thus an exception to the rule. It only comes into play if the board decides, apparently *sua sponte,* that it wants to reconsider a prisoner's hearing date. And even then the date remains unchanged unless, based on such criteria as the board "deems appropriate," it decides a change is warranted. Wash.Rev.Code Ann. § 9.95.052. Thus, while the possibility of a reexamination exists under the new law, the law is designed to operate otherwise.

I cannot agree that this new scheme, designed to postpone for 30 years any review of Powell's parole eligibility, does not represent a disadvantage over the former law, which would have granted Powell a parole review in 20 years if his behavior satisfied the superintendent. If a state's adoption of a "safety hatch" provision such as section 9.95.052—creating the possibility, however remote, that the harsher effects of a new law could be eliminated in certain cases—were enough to shield the law from ex post facto difficulties, then *any* law could be made immune from ex post facto review and invalidation. I do not believe the guarantees of the Ex Post Facto Clause are so easily circumvented. "Subtle *ex post facto* violations are no more permissible than overt ones." *Collins v. Youngblood,* 497 U.S. 37, 46, 110 S.Ct. 2715, 2721, 111 L.Ed.2d 30 (1990).

I would affirm the district court's grant of Powell's habeas petition.