## LINDSEY ET AL. *v.* WASHINGTON.

No. 660.   Argued May 3, 1937.—Decided May 17, 1937.

*Mr. Spencer Gordon* for petitioners.

*Messrs. C. C. Quackenbush* and *Ralph E. Foley,* with whom *Mr. A. O. Colburn* was on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

In this case certiorari was granted to review a decision of the Supreme Court of Washington, 187 Wash. 346; 61 P. (2d) 293, that Chapter 114 of the Laws of Washington, 1935, under which petitioners were sentenced to terms of imprisonment, is not an *ex post facto* law prohibited by Article I, § 10, of the Federal Constitution.

Petitioners were convicted in the state court of the crime of grand larceny, made a felony by state law,

§ 2601 (2), Remington Rev. Stat., and sentenced to be punished by confinement in the state penitentiary and reformatory respectively for terms of not more than fifteen years. On April 15, 1935, the date of the commission of the offense, the prescribed penalty for grand larceny was imprisonment "for not more than fifteen years." No minimum term was prescribed. Remington Rev. Stat., § 2605. On that date, the statutes also provided, Remington Rev. Stat., § 2281, for indeterminate sentences for any felony "for which no fixed period of confinement is imposed by law." All such sentences were required to be "for a term not less than the minimum nor greater than the maximum term of imprisonment prescribed by law for the offense . . . and where no minimum term of imprisonment is prescribed by law, the court shall fix the same in his discretion at not less than six months nor more than five years; . . ." Section 2282, as modified by § 10803, provided for a parole board which could "at any time after the expiration of the minimum term of imprisonment . . . direct that any prisoner . . . shall be released on parole. . . ."

The Act of June 12, 1935, enacted after petitioners' commission of the offense and before sentence, modifies the sections relating to indeterminate sentences and paroles and provides, so far as now relevant, § 2, paragraph 1, that upon conviction of a felony "the court . . . shall fix the maximum term of such person's sentence only. The maximum term to be fixed by the court shall be the maximum provided by law for the crime of which such person was convicted, if the law provides for a maximum term." It also provides, § 2, paragraph 4, that within six months after the admission of a convicted person to the place of confinement, the board of prison, terms and paroles ". . . shall fix the duration of his or her confinement. The term of imprisonment so fixed shall not exceed the maximum provided by law for the

offense for which he or she was convicted or the maximum fixed by the court, where the law does not provide for a maximum term."

By § 2, paragraph 6, if the person undergoing sentence commits any infraction of the rules and regulations of the place of confinement, the board ". . . may revoke any order theretofore made determining the length of the time such convicted person shall be imprisoned and make a new order determining the length of time he or she shall serve, not exceeding the maximum penalty provided by law for the crime for which he or she was convicted." It is provided, § 4, that a convicted person may be released on parole by the board after he has served the period of confinement fixed by the board, less time credits for good behavior and diligence which may not exceed "one-third of his sentence as fixed by the board," and that the board shall have power ". . . to return such person to the confines of the institution from which he or she was paroled, at its discretion." The governor is authorized to cancel and revoke paroles granted by the board, and the period following cancellation or revocation of parole, and prior to the convicted person's return to custody, is not a "part of his term."

The sentences of not more than fifteen years imposed on petitioners were the maximum provided by law, and were made mandatory by the Act of 1935. In obedience to its command the court fixed no minimum. It does not appear from the record whether the board of prison, terms and paroles has fixed the "duration" of petitioners' "confinement." Numerous grounds are urged by petitioners in support of their contention that the sentence authorized by the later statute is *ex post facto* as applied to their offense, committed before its enactment. We find it necessary to consider only one.

In sustaining the sentence the Supreme Court of Washington, without analysis or comparison of the prac-

tical operation of the two statutes, declared "The amending act does not change or inflict a greater punishment than the law in force when the alleged crime was committed for the court could under the law in force at that time pronounce a maximum sentence of not more than fifteen years. The minimum and maximum punishments remain the same as before the enactment of the act of 1935." This Court, in applying the *ex post facto* prohibition of the Federal Constitution to state laws, accepts the meaning ascribed to them by the highest court of the state. But when their meaning is thus established, whether the standards of punishment set up before and after the commission of an offense differ, and whether the later standard is more onerous than the earlier within the meaning of the constitutional prohibition, are federal questions which this Court will determine for itself. *Cummings* v. *Missouri*, 4 Wall. 277, 320, rev'g, *State* v. *Cummings*, 36 Mo. 263, 273; *Kring* v. *Missouri*, 107 U. S. 221, 223-224, 231-232. To answer them we compare the practical operation of the two statutes as applied to petitioners' offense.

Under the earlier § 2281, as the state concedes, the prisoners could have been sentenced for a maximum term less than the fifteen year penalty authorized by the statute. Under the later statute, the sentence by the court, as commanded by § 2, was for fifteen years, and the "duration of confinement" to be fixed by the board of prison, terms and paroles may be for any number of years not exceeding fifteen.

The effect of the new statute is to make mandatory what was before only the maximum sentence. Under it the prisoners may be held to confinement during the entire fifteen year period. Even if they are admitted to parole, to which they become eligible after the expiration of the terms fixed by the board, they remain subject to its surveillance and the parole may, until the expira-

tion of the fifteen years, be revoked at the discretion of the board or cancelled at the will of the governor. It is true that petitioners might have been sentenced to fifteen years under the old statute. But the *ex post facto* clause looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed. The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer. *Kring v. Missouri, supra,* 228-229; *In re Medley,* 134 U. S. 160, 171; *Thompson v. Utah,* 170 U. S. 343, 351. It is for this reason that an increase in the possible penalty is *ex post facto, Calder v. Bull,* 3 Dall. 386, 390; *Cummings v. Missouri, supra,* 326; *Malloy v. South Carolina,* 237 U. S. 180, 184, regardless of the length of the sentence actually imposed, since the measure of punishment prescribed by the later statute is more severe than that of the earlier, *State v. Callahan,* 109 La. 946; 33 So. 931; *State v. Smith,* 56 Ore. 21; 107 Pac. 980.

Removal of the possibility of a sentence of less than fifteen years, at the end of which petitioners would be freed from further confinement and the tutelage of a parole revocable at will, operates to their detriment in the sense that the standard of punishment adopted by the new statute is more onerous than that of the old. It could hardly be thought that, if a punishment for murder of life imprisonment or death were changed to death alone, the latter penalty could be applied to homicide committed before the change. *Marion v. State,* 16 Neb. 349; 20 N. W. 289. Yet this is only a more striking instance of the detriment which ensues from the revision of a statute providing for a maximum and minimum punishment by making the maximum compulsory. We need not inquire whether this is technically an increase in the punishment annexed to the crime, see *Calder v. Bull, supra,* 390. It is plainly to the substantial disadvantage

of petitioners to be deprived of all opportunity to receive a sentence which would give them freedom from custody and control prior to the expiration of the 15-year term.

Petitioners were wrongly sentenced under the Act of 1935. Whether, in consequence of the invalidity of the later act, as applied to petitioners, they may be sentenced under the earlier, is a question for the state court.

The cause will be reversed and remanded for further proceedings, not inconsistent with this opinion.

*Reversed.*