[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION STATEMENT OF THE CASE
In his habeas corpus petition, this sentenced inmate in the custody of the Department of Correction alleges that Section54-125a(b) of the General Statutes is an ex post facto law in violation of the United States Constitution, article 1, § 10, cl. 1.
 FACTS
On June 14, 1996, the petitioner, Michael Robinson, entered a plea of nolo contendere to the charges of Assault 1, in violation of General Statutes § 53a-59(a)(3), and Possession of a Firearm, in violation of § 53a-217c, for crimes committed in January of 1995. On July 1, 1996, Public Act 95-255 effectively altered General Statutes § 54-125a(b) by requiring that persons, convicted of an offense involving the use, attempted use, or threatened use of physical force against another person, be ineligible for parole until they had served 85% of their definite sentences. Prior to July 1, 1996, such a person would be eligible for parole after they had served 50% of their definite sentences. General Statutes (Rev. to July 1, 1996) § 54-125a(b). On August 2, 1996, the petitioner was sentenced, according to a June 14, 1996 plea agreement, to ten years imprisonment, suspended after six years, with three years probation for the assault charge and two years probation for the firearm charge. In September of 1996, the Board of Parole notified the petitioner by letter that, due to the nature of his offense, the petitioner would have to serve 85% of his sentence under the revised version of General Statutes § 54-1 25a(b). CT Page 2868
On August 21, 1998, the petitioner filed a fourth amended petition for a writ of habeas corpus. The petitioner alleges that the application of P.A. 95-255, to him, retroactively increases his punishment and therefore violates the ex post facto clause of the United States Constitution. See U.S. Const., art. I, § 10.
 DISCUSSION I Subject Matter Jurisdiction
The purpose of a writ of habeas corpus is to "address an illegal confinement or deprivation of liberty." Abed v.Commissioner of Correction, 43 Conn. App. 176, 179-80,682 A.2d 558, cert. denied, 239 Conn. 937, 684 A.2d 707 (1996). "Subject matter jurisdiction for adjudicating habeas petitions is conferred on the Superior Court by General Statutes § 52-466, . . . which gives it the authority to hear those petitions that allege illegal confinement or deprivation of liberty." Id., 179.
The respondent argues that this court does not have subject matter jurisdiction to decide the petitioner's action. This court previously decided this question in this case on January 7, 1999. In a memorandum of decision this court held that it does have subject matter jurisdiction to decide this petitioner's writ of habeas corpus because the petitioner sufficiently alleges an ex post facto claim. Therefore, the law of the case applies, establishing that this court does have subject matter jurisdiction to decide this petition. See Breen v. Phelps,186 Conn. 86, 99, 439 A.2d 1066 (1982).
 II Characterization of § 54-125a(b)
The respondent also argues that the new provision in General Statutes § 54-125a(b) is an administrative directive to which the ex post facto clause does not apply. "The ex post facto clause does not prevent prison administrators from adopting and enforcing reasonable regulations that are consistent with prison administration, safety, and efficiency." Abed v. Commissioner ofCorrection, 43 Conn: App. 176, 1783 (1996). CT Page 2869
To determine whether General Statutes § 54-125a(b) is a legislative mandate, or an administrative directive, its legislative history is pertinent. In viewing the legislative history of the statute, the legislature bestowed certain power to the Board of Parole "to promulgate regulations to insure that truth in sentencing is applied to serious, violent criminals. This aspect of the bill is intended to insure that a procedure exists whereby the Board of Parole can properly distinguish between the serious violent criminals that this bill intends to reach and the clearly non-serious violent offender." 38 5. Proc. Pt. 13, 1995 Sess, p. 4647, remarks of Senator Thomas F. Upson. The legislature, however, did grant the Board of Parole the power to decide whether "violent offenders" serve a minimum of eighty-five or fifty percent of their definite sentences. See General Statutes § 54-125a(b).
Here, the petitioner is only challenging the eighty-five percent sentencing mandate and not the definition of "violent offender." Therefore, because the eighty-five percent sentencing provision is a legislature mandate, and not an administrative directive, § 54-125a(b) is subject to ex post facto review.
 III The Ex Post Facto Clause
The petitioner alleges that § 54-185a(b) violates the ex post facto clause of the United States Constitution, due to the fact that it is retroactive and increases the punishment for crimes committed prior to its enactment. The U.S. Constitution, in pertinent part, states that "[n]o state shall . . . pass any . . . ex post facto law. . . ." U.S. Const., art. I, § 10. "The ex post facto prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time I it was committed; or imposes additional punishment to that then prescribed." (Internal quotation marks omitted.) Weaver v. Graham, 450 U.S. 24, 28,101 S.Ct. 960, 67 L.Ed.2d 17 (1981).
"In accordance with this original understanding, we have held that the Clause is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." (Internal quotation marks omitted.) California Dept. ofCorrections v. Morales, 514 U.S. 499, 504, 115 S.Ct. 1597,131 L.Ed.2d 588 (1995). "[T]wo critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before CT Page 2870 its enactment, and it must ii disadvantage the offender affected by it." Weaver v. Graham, supra, 450 U.S. 29.
"The presence or absence of an affirmative, enforceable right is not relevant, however, to the ex post facto prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense." Weaver v. Graham,
supra, 450 U.S. 30-31. "[A] prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." (Internal quotation marks omitted.) Lynce v. Mathis, 519 U.S. 433, 445-46, 117 S.Ct. 891,137 L.Ed.2d 63 (1997).
In Lindsay v. Washington, 301 U.S. 397, 400, 57 S.Ct. 797,81 L.Ed. 1182 (1937), the court held that a new statute that made "mandatory what was before only the maximum sentence" violated the ex post facto clause. The petitioners in Lindsay v.Washington were convicted of grand larceny at a time when the maximum sentence for such an offense was fifteen years. Lindsayv. Washington, supra, 301 U.S. 397-98. Prior to the petitioner's sentencing a new act altered the previous sentencing statute and made the petitioners serve no less than fifteen years. Id., 400. The United States Supreme Court stated that "the ex post facto clause looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed. The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer." Id., 401. Therefore, the Court held that "[i]t is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive a sentence which would give them freedom from custody and control prior to the expiration of the 15-year term." Id., 401-02.
In Weaver v. Graham, supra, 450 U.S. 26-27, the state of Florida implemented a new state statute for computing monthly gain-time deductions for sentenced prisoners. The Court held that CT Page 2871 this statute was ex post facto when applied to prisoners whose offenses took place before the date the new statute was implemented. Id., 32-33. The Court further stated that "[f]or prisoners who committed crimes before its enactment . . . [the new statute] substantially alters the consequences attached to a crime already completed, and therefore changes the quantum of punishment." (Internal quotation marks omitted.) Id.,
However, the Court in California Dept. of Corrections v.Morales, supra, 514 U.S. 503, discussed a statute that was applied to prisoners sentenced prior to its enactment and "authorized the Board [of Parole] to defer subsequent suitability hearings for up to three years if the prisoner has been convicted of more than one offense which involves the taking of a life and if the Board finds that it is not reasonable to expect that parole would be granted at a hearing during the following years and states the bases for the finding." (Internal quotation marks omitted.) The Court held that "the question of what legislative adjustments will be held to be of sufficient moment to transgress the constitutional prohibition must be a matter of degree. . . . [W]e must determine whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes. (Citations omitted; internal quotation marks omitted.) Id., 509. The Court determined that the California statute did not violate the ex post facto clause because "[f]irst, the amendment applies only to a class of prisoners for whom the likelihood of release on parole is quite remote[1] . . . [s]econd, . . . [t]he amendment has no effect on the date of any prisoner's initial parole suitability hearing; it affects the timing only of subsequent hearings . . . [m]oreover, the Board retains the authority to tailor the frequency of subsequent suitability hearings to the particular circumstances of the individual prisoner." (Citations omitted.) Id., 510-11.
In Weaver v. Graham and Lindsay v. Washington, the United States Supreme Court held that an ex post facto statute must be applied retrospectively and disadvantage the I person affected by the provision. See Weaver v. Graham, supra, 450 U.S. 29; Lindsayv. Washington, supra, 301 U.S. 401. In the more recent case ofCalifornia Dept. of Corrections v. Morales, supra, 514 U.S. 509, the court held that the person must be more than just disadvantaged, there must be a "sufficient risk of increasing the measure of punishment." The Court in California Dept. ofCorrections v. Morales, supra, 514 U.S. 509, further held that the amendment cannot just create the "most speculative and CT Page 2872 attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the Ex Post Facto Clause." Thus, because the Court in California Dept. of Corrections v. Morales promulgated a new focus to the ex post facto review, this court must apply this new three part test instead of the two-part test indicated by the Court in Weaver v. Graham and Lindsay v. Washington.
A. The first consideration under California Dept. ofCorrections v. Morales, supra, 514 U.S. 510, is the number of prisoners the amendment will affect. Under General Statutes §54-125a(b) the legislature indicated that "[i]t would mean that roughly 4,000 prisoners would be serving . . . from fifty to 85% [of their sentences]. Doing just some rough calculations, and even very conservative calculations that of 4,000 prisoners who may be averaging 65% of their time now,[2] going from 65 to 85%, it would seem to me that we're increasing, we're subjecting a future legislature . . . to a prison population expansion of between one and two thousand." 38 S. Proc., Pt. 8, 1995 Sess., pp. 2861, remarks of Senator George C. Jepson. These four thousand provide some estimate of the number of prisoners who were convicted before July 1, 1996, sentenced after July 1, 1996, and are currently incarcerated as "violent offenders". Therefore, the class of persons affected by General Statutes § 54-125a(b) is not small. Further, this class is not one for which release on parole is remote because the majority of the "violent offender" prisoners are released on parole after serving a little over fifty percent of their sentences.[3]
B. Second, the statute in California Dept. of Corrections v.Morales, supra 514 U.S. 511, had "no effect on the date of any prisoner's initial parole suitability hearing; it affects the timing only of subsequent hearings." Unlike the California statute, General Statutes § 54-125a(b) eliminates any possibility for parole, until the prisoners have served eighty-five percent of their sentences. Therefore, § 54-125a(b) does effect the date of a prisoner's initial parole hearing. Further the statute serves to lengthen a prisoner's sentence if, as Senator Jepson indicated, the majority of the effected prisoners serve sixty-five percent of their sentences, then these prisoners would be serving a minimum of twenty percent longer in prison than under the statute in effect prior to July 1, 1996.
C. Third, the statute in California Dept. of Corrections v.CT Page 2873Morales, supra, 514 U.S. 511, gave the Board the authority to "tailor the frequency of subsequent suitability hearings to the particular circumstances of the individual prisoner." The California statute is different from the Connecticut statute in this respect also. The Connecticut statute gives the Boarddiscretion to decide who is a "violent offender," but the Board does not have any discretion to choose to parole a designated "violent offender" prior to the prisoner serving eighty-five percent of their sentence. See General Statutes § 54-125a(b). Therefore, § 54-125a(b), unlike the California statute, disadvantages all prisoners deemed "violent offenders" who were convicted prior to July 1, 1996 because the Board of Parole does not have discretion to parole a defendant until he has served eighty-five percent of his sentence.
In addition, the respondent argues that § 54-125a(b) does not apply to the petitioner retroactively because the petitioner was sentenced after July 1, 1996. General Statutes § 54-125a(b) provides in pertinent part that "[a] person convicted of an offense . . . shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five percent of the definite sentence imposed." The agreed upon effective date for this section is July 1, 1996.[4]
Further, the definition of "conviction" is a plea of guilty, according to the United States Supreme Court in Boykin v. Alabama,395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The respondent argues that the word "convicted" should be the determined from the date of the petitioner's sentencing on August 2, 1996. The respondent's theory conflicts with the Court inBoykin v. Alabama, supra, 395 U.S. 242. Therefore, because the petitioner was "convicted" when he entered a plea of nolo contendere in June of 1996, application of a statute with an effective date of July 1, 1996, to this petitioner, would be retroactive.
The respondent further argues that "[t]his 85% designation of petitioner in September 1996, after his conviction on August 2, 1996, was necessarily required by the legislature, which in enacting P.A. 95-255 made it clear in the legislative history that it was to be applied immediately. Petitioner had ample advance notice he would be required to serve 85% of his sentence based on his offense. This factor therefore militates against a determination that applying the 85% rule . . . is an ex post facto violation." "Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the CT Page 2874 lack of fair notice and government restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Weaver v. Graham, supra, 450 U.S. 30.
Here, the petitioner was not given fair notice of the increase in punishment because he entered a plea in June of 1996, one month prior to the change in General Statutes § 54-125a(b). Although the petitioner was not sentenced until August of 1996, under Connecticut Practice Book § 39-26[5] and 39-27[6], the petitioner would have been unable to withdraw his plea from June prior to his sentencing, but following the effective date of § 54-1 25a(b), July 1, 1996. Therefore, the petitioner did not have adequate notice of his increased punishment prior to his plea of nolo contendere in June of 1996.
Thus, General Statutes § 54-125a(b) is effectively "more onerous than the law in effect on the date of the offense . . . [and] changes the legal consequences of acts completed before its effective date"; Weaver v. Graham, supra, 450 U.S. 30-31; because it denies the petitioner an opportunity for parole prior to serving eighty-five percent of his sentence. Further, this statute does not have a "speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes . . ." California Dept. ofCorrections v. Morales, supra, 514 U.S. 509; but does in fact increase the petitioner's punishment. General Statutes § 54-125a(b), as applied to this petitioner, is an ex post facto violation and the petitioner's writ of habeas corpus should be granted. See Puckett v. Abels, 684 So.2d 671 (Miss. 1996).
 IV The Relief Requested
The petitioner asks inter alia, that his conviction be vacated. This court's conclusion as to the statute in question does not involve his conviction, nor has he produced any evidence nor argument questioning the entry of his plea. That relief is denied.
However, he is entitled to receive what he wold have received, absent the statutory charge.
It is therefore ordered that the petitioner's parole eligibility be determined based on the statutes in effect on the date of the commission of the offenses of which he was convicted. CT Page 2875