BARNES, J., for the Court.
 

 ¶ 1. In this post-conviction relief appeal, we are asked to determine whether a change in the law regarding which offenders are eligible for trusty-earned time constitutes a prohibited ex post facto application of the law as to Van Gray. The trial court found that it did not and dismissed Gray’s motion for post-conviction relief. Finding error, we reverse the judgment of the trial court and remand this ease with instructions that Gray be provided an evi-dentiary hearing regarding his motion.
 

 
 *285
 
 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On October 24, 2001, Gray sold cocaine weighing less than 0.1 gram to an undercover agent in Lamar County. He pleaded guilty on October 1, 2004, to the crime of sale and transfer of cocaine in violation of Mississippi Code Annotated section 41-29-139 (Rev.2005). Following his guilty plea, Gray was sentenced to fifteen years in the custody of the Mississippi Department of Corrections with seven years to serve and eight years suspended.
 
 [1]
 

 ¶ 3. At the time Gray committed the crime, offenders convicted of sale or transfer of a controlled substance were eligible to be placed in trusty status and to accumulate trusty-earned time pursuant to Mississippi Code Annotated section 47-5-138.1 (Rev.2001). However, prior to the time Gray was convicted and sentenced, the statute was changed to exclude offenders convicted of sale or transfer of a controlled substance from eligibility for the earned-time allowance. Miss.Code Ann. § 47-5-138.1 (Rev.2004). The effective date of the amendment was April 28, 2004.
 
 Id.
 

 ¶ 4. Gray claims that applying the change in the law to him amounts to the application of an unconstitutional ex post facto law. He pursued this claim through the Mississippi Department of Corrections administrative remedies, and when he was unsuccessful, he filed a petition in the Circuit Court of Lamar County to clarify his sentence. Gray claimed that the amended statute denied him the ability to earn additional earned time and, thus, was an increase in the punishment for his crime. The trial court found that while Gray had lost the ability to earn additional earned time, the change did not constitute an ex post facto violation. The trial court reasoned that the authority to grant earned time is not a form of sentencing or punishment but is a method enacted by the Legislature to encourage good behavior among inmates and to help ease overcrowding. The trial court also noted that language used in sections 47-5-138 and -138.1, regarding earned time, uses the permissive term “may” instead of the definitive term “shall”; hence, earned time was not an entitlement. In dismissing the petition, the court noted that the term of Gray’s incarceration was within the statutory limits for the crime and that the legislation which took away the earned time did not increase the amount of punishment for the crime. From this dismissal Gray appeals, arguing that the application of the amended Mississippi Code Annotated section 47-5-138.1 to him constituted an ex post facto violation and that he was entitled to an evidentiary hearing on his claim. Due to the import of the issues presented in Gray’s appeal and the fact that Gray is acting pro se, we requested and were provided with an
 
 Amicus Curiae
 
 brief from the Criminal Appeals Clinic at the University of Mississippi School of Law.
 
 [2]
 
 Finding error, we reverse the judgment of the trial court and remand this case for an eviden-tiary hearing to determine whether there is a significant risk that the practical application of the amended statute will result in a longer period of incarceration for Gray.
 

 
 *286
 
 STANDARD OF REVIEW
 

 ¶ 5. This Court reviews a trial court’s dismissal of a post-conviction-relief petition de novo to determine whether the defendant has presented a claim procedurally alive “substantially showing denial of a state or federal right.”
 
 Young v. State,
 
 731 So.2d 1120, 1122(¶ 9) (Miss.1999) (quoting
 
 Myers v. State,
 
 583 So.2d 174, 176 (Miss.1991)). Additionally, the appropriate standard for reviewing questions of law is de novo.
 
 Rice v. State,
 
 910 So.2d 1163, 1164-65(¶ 4) (Miss.Ct.App.2005) (citing
 
 Brown v. State,
 
 731 So.2d 595, 598(¶ 6) (Miss.1999)). In the case at bar, the issue of whether the application of Mississippi Code Annotated section 47-5-138.1 to Gray constitutes an ex post facto violation is a question of law; therefore, we will apply a de novo standard of review.
 

 ANALYSIS
 

 ¶ 6. Gray argues that he was subjected to an ex post facto violation when Mississippi Code Annotated section 47-5-138.1 was applied to him, thereby preventing him from being eligible for earned time and a potential early release. Section 47-5-138.1, which was not in effect at the time Gray’s crime was committed but was in effect at the time of his conviction and sentencing, states as follows in pertinent part:
 

 (1) In addition to any other administrative reduction of sentence, an offender in trusty status as defined by the classification board of the Department of Corrections may be awarded a trusty time allowance of thirty (30) days’ reduction of sentence for each thirty (30) days of participation during any calendar month in an approved program while in trusty status, including satisfactory participation in education or instructional programs, satisfactory participation in work projects and satisfactory participation in any special incentive program.
 

 (2) An offender in trusty status
 
 shall not be eligible for a reduction of sentence under this section if:
 

 (e)
 
 The offender was convicted violating Section 41-29-139 (a) and sentenced under Section 41-29-139(b) or 41-29-1390 ...
 

 Miss.Code Ann. § 47-5-138.1 (Rev.2004) (emphasis added).
 

 ¶7. “Article I, [section] 10, of the Constitution forbids the States from passing any ‘ex post facto [l]aw.’ ”
 
 Cal. Dep’t of Corr. v. Morales,
 
 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). “[A]n ex post facto law is one which creates a new offense or changes the punishment, to the detriment of the accused, after the commission of a crime.”
 
 Bell v. State,
 
 726 So.2d 93, 94(¶ 7) (Miss.1998). In order to understand fully the complex issues presented by this appeal, it is necessary to examine the evolution of the law regarding the Ex Post Facto Clause of the Constitution. We begin with
 
 Lindsey v. Washington,
 
 301 U.S. 397, 397-98, 57 S.Ct. 797, 81 L.Ed. 1182 (1937),- in which the petitioners were convicted of grand larceny; at the time they committed their crimes, the relevant statute mandated that they could not be sentenced to more than fifteen years in prison and allowed the judge to impose any sentence up to the maximum of fifteen years. However, after the commission of the petitioners’ offenses but before they were sentenced, a new statute was enacted that required the judge to sentence offenders to the maximum fifteen-year sentence.
 
 Id.
 
 at 398, 57 S.Ct. 797. The United States Supreme Court held that the application of the new statute to the petitioners constituted an ex post facto violation in that “the standard of punishment adopted by the new statute [was] more onerous
 
 *287
 
 than that of the old.”
 
 Id.
 
 at 401, 57 S.Ct. 797. The Court stated:
 

 The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer. It is for this reason that an increase in the possible penalty is ex post facto, regardless of the length of the sentence actually imposed, since the measure of punishment prescribed by the later statute is more severe than that of the earlier.... We need not inquire whether this is technically an increase in the punishment annexed to the crime.... It is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive a sentence which would give them freedom from custody and control prior to the expiration of the 15-year term.
 

 Id.
 
 at 401-02, 57 S.Ct. 797 (internal citations omitted).
 

 ¶ 8. In
 
 Weaver v. Graham,
 
 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the Supreme Court stated that “two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.”
 
 Id.
 
 at 29, 101 S.Ct. 960 (citing
 
 Lindsey,
 
 301 U.S. at 401, 57 S.Ct. 797;
 
 Calder v. Bull,
 
 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798)).
 
 Weaver
 
 involved an ex post facto challenge to a new Florida statute that reduced the amount of monthly gain-time credits a prisoner could receive for good behavior from that which a prisoner could have received under the old statute.
 
 Id.
 
 at 26, 101 S.Ct. 960. The statute in place at the time the petitioner committed his crime and was sentenced “provided a formula for deducting gain-time credits from the sentences ‘of every prisoner who ha[d] committed no infraction of the rules or regulations ... and who ha[d] performed in a faithful, diligent, industrious, orderly and peaceful manner, the work, duties and tasks assigned to him.’ ”
 
 Id.
 
 at 26, 101 S.Ct. 960 (citing Fla. Stat. § 944.27(1) (1975)). The statute also set forth a detailed scheme for the amount of time to be deducted and stated that the authorities “shall grant the ... deductions.”
 
 Id.
 
 The new statute, however, reduced the amount of gain-time credit that could be earned.
 
 Id.
 
 at 26-27, 101 S.Ct. 960.
 

 ¶ 9. The petitioner’s crime was committed before the new statute was enacted; therefore, he argued that the application of the new statute to him constituted an ex post facto violation in that it increased the amount of time he would be required to serve in prison.
 
 Id.
 
 at 27, 101 S.Ct. 960. In finding an ex post facto violation, the Supreme Court noted that “a law need not impair a ‘vested right’ to violate the ex post facto prohibition” and that “even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.”
 
 Id.
 
 at 29-31, 101 S.Ct. 960. The Supreme Court stated that “under both the new and old statutes, an inmate is automatically entitled to the monthly gain time simply for avoiding disciplinary infractions and performing his assigned tasks.”
 
 Id.
 
 at 35, 101 S.Ct. 960. Thus, the Supreme Court found that the new law “eonstrict[ed] the inmate’s opportunity to earn early release, and thereby ma[de] more onerous the punishment for crimes committed before its enactment.”
 
 Id.
 
 at 35-36, 101 S.Ct. 960.
 

 ¶ 10. In
 
 Miller v. Florida,
 
 482 U.S. 423, 426-27, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), the Supreme Court addressed an ex post facto challenge regarding the Florida Legislature’s enactment of legislation
 
 *288
 
 that had the effect of increasing the presumptive sentencing range for the petitioner’s crime after its commission but before the petitioner was sentenced. Under the old law, the petitioner’s presumptive sentencing range was three-and-one-half to four-and-one-half years and, in order to deviate from this range, the judge was required to set forth written “clear and convincing reasons.”
 
 Id.
 
 at 424, 426, 107 S.Ct. 2446. The new law, however, resulted in the petitioner being subject to a five- and-one-half-year to seven-year sentencing range.
 
 Id.
 
 at 427, 107 S.Ct. 2446. The petitioner received a seven-year sentence in accordance with the new law.
 
 Id.
 
 at 428, 107 S.Ct. 2446. On appeal, the Florida District Court of Appeal vacated the petitioner’s sentence on the ground that the guidelines in effect at the time the petitioner committed the offense should have been utilized; however, the Supreme Court of Florida reversed, holding that a trial court may rely on the sentencing guidelines in effect at the time the sentence is imposed.
 
 Id.
 
 The supreme court further held that the new presumptive sentencing range did not “change the statutory limits of the sentence imposed for a particular offense”; therefore, the change was a procedural change and, thus, not subject to the Ex Post Facto Clause.
 
 Id.
 

 ¶ 11. Utilizing the disadvantage test set forth in
 
 Weaver,
 
 the Supreme Court reversed the decision of the appellate court, reasoning that the application of the new legislation to the petitioner constituted an ex post facto violation because (1) the law was clearly retrospective as applied to the petitioner, and (2) the petitioner was disadvantaged in that, under the prior law, the judge would have had to depart from the sentencing range in order to impose the sentence that petitioner received and would have had to support his departure by “clear and convincing reasons ... on facts proved beyond a reasonable doubt,” while under the new statute, the sentence was in the presumptive range; therefore, it did not have to be supported in any way.
 
 Id.
 
 at 430-33, 107 S.Ct. 2446. Relying on
 
 Lindsey,
 
 the Supreme Court stated that a prisoner is not required to “show definitively that he would have gotten a lesser sentence” under the previous law in order to demonstrate an ex post facto violation.
 
 Id.
 
 at 432, 107 S.Ct. 2446. According to the Supreme Court,
 
 “Lindsey
 
 establishes ‘that one is not barred from challenging a change in the penal code on ex post facto grounds simply because the sentence he received under the new law was not more onerous than that which he might have received under the old.’ ”
 
 [3]
 

 Id.
 
 (citation omitted).
 

 ¶ 12. However, in
 
 Morales,
 
 514 U.S. at 506 n. 3, 115 S.Ct. 1597, the Supreme Court held that when examining whether an ex post facto violation occurs, the focus of the inquiry is not on whether a legislative change merely produces some sort of ambiguous “disadvantage,” as some previous decisions, specifically
 
 Lindsey, Miller,
 
 and
 
 Weaver,
 
 had implied.
 
 [4]
 
 The Supreme
 
 *289
 
 Court stated that “the focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of ‘disadvantage,’ nor ... on whether an amendment affects a prisoner’s
 
 ‘opportunity
 
 to take advantage of provisions for early release,’ but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.”
 
 Id.
 
 (internal citations omitted). The Supreme Court further stated that “what legislative adjustments ‘will be held to be of sufficient moment to transgress the constitutional prohibition’
 
 must
 
 be a matter of ‘degree.’ ”
 
 Id.
 
 at 509, 115 S.Ct. 1597 (citation omitted).
 

 ¶ 13. In
 
 Morales,
 
 the Supreme Court addressed an amendment to a California statute that allowed the Board of Prison Terms to defer parole suitability hearings for up to three years for certain inmates, one of which was the petitioner, while under the old statute, the petitioner would have been entitled to suitability hearings every year.
 
 Id.
 
 at 503, 115 S.Ct. 1597. The petitioner argued that the amendment constituted an ex post facto law; the Supreme Court, however, found that the “amendment create[d] only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the Ex Post Facto Clause.”
 
 Id.
 
 at 509, 115 S.Ct. 1597. The Supreme Court based this holding on the following: (1) the new statute only applied to a small class of prisoners; (2) the Board’s authority under the new statute was narrowly tailored in that the new statute only affected the timing of subsequent parole suitability hearings, not the initial hearing, and before the Board could defer subsequent hearings, it had to determine that there was no reasonable expectation that parole would be granted as the result of a hearing during the following years; and (3) the Board had the authority under the new statute to tailor the frequency of suitability hearings to the needs of individual prisoners.
 
 Id.
 
 at 510-12, 115 S.Ct. 1597.
 

 ¶ 14. Later, in
 
 Lynce v. Mathis,
 
 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), the Supreme Court addressed a Florida attorney general opinion that interpreted a prior statute as retroactively cancelling all provisional early release credits which had been awarded to inmates convicted of murder or attempted murder.
 
 Id.
 
 at 436, 117 S.Ct. 891. Pursuant to such statute, the petitioner had been released from prison based on his accumulation of early release credits; however, following the opinion, the petitioner was rearrested and returned to prison.
 
 Id.
 
 Curiously, in finding that the application of the attorney general’s opinion to the petitioner was an ex post facto violation, the Court referred to the “disadvantage” suffered by the offender although it had stated in
 
 Morales
 
 that this was not the appropriate inquiry.
 
 Id.
 
 at 442, 117 S.Ct. 891. The Court stated that, unlike in
 
 Morales,
 
 the attorney general’s opinion “did more than simply remove a mechanism that created an
 
 opportunity
 
 for early release for a class of prisoners whose release was unlikely; rather, it made ineligible for early release a class of prisoners who were previously eligible—including some, like [the] petitioner, who had actually been released.”
 
 Id.
 
 at 447, 117 S.Ct. 891. The Supreme Court noted that the fact the petitioner had actually been awarded the early release credits that were later retroactively cancelled obviated the need “to speculate about what might have happened.”
 
 Id.
 
 at 446, 117 S.Ct. 891.
 

 
 *290
 
 ¶ 15. The Supreme Court revisited, and clarified, its
 
 Morales
 
 holding in
 
 Garner v. Jones,
 
 529 U.S. 244, 247, 120 S.Ct. 1362, 146 L.Ed.2d 286 (2000), in which the respondent escaped from prison while he was serving a life sentence for murder, subsequently committed another murder, and was sentenced to an additional life term. At the time the respondent committed the second murder, the Georgia Board of Pardons was required to reconsider an inmate serving a life sentence for parole every three years after parole was initially denied.
 
 Id.
 
 After the respondent had begun serving his second life sentence, the rule was changed to required reconsideration at the least every eight years, and the new law was applied to the respondent.
 
 Id.
 
 The Eleventh Circuit Court of Appeals found that the application of the new law to the respondent constituted an ex post facto violation; the Supreme Court, however, disagreed.
 
 Id.
 
 at 246, 120 S.Ct. 1362.
 

 ¶ 16. Relying on
 
 Morales,
 
 the Supreme Court stated that “[t]he controlling inquiry, we determined, was whether retroactive application of the change in ... [the] law created ‘a sufficient risk of increasing the measure of punishment attached to the covered crimes.’ ”
 
 Id.
 
 at 250, 120 S.Ct. 1362 (quoting
 
 Morales,
 
 514 U.S. at 509, 115 S.Ct. 1597). In considering whether the new rule “[created] a significant risk of prolonging [the] respondent’s incarceration,” the Supreme Court stated that “[t]he requisite risk is not inherent in the framework of [the new] rule, ... and it has not otherwise been demonstrated on the record.”
 
 Id.
 
 at 251, 120 S.Ct. 1362. The Supreme Court first noted that the Georgia Parole Board had “board discretion ... in determining whether an inmate should receive early release.”
 
 Id.
 
 at 253, 120 S.Ct. 1362. However, the Supreme Court stated that “[t]he presence of discretion does not displace the protections of the Ex Post Facto Clause.”
 
 Id.
 
 Nonetheless, the Supreme Court found that the “law changing the frequency of parole reviews [was] qualified in two important respects.”
 
 Id.
 
 at 254, 120 S.Ct. 1362. First, the Board had discretion as to how often to reconsider an inmate’s parole, with eight years being the maximum interim period; second, the Board’s policies provided for expedited review in the case of changed circumstances or new information.
 
 Id.
 
 Therefore, the Supreme Court stated that the qualifications permitted “a more careful and accurate exercise of the discretion the Board ... had from the outset.”
 
 Id.
 

 ¶ 17. The Supreme Court then elaborated further on the test set forth in
 
 Morales,
 
 stating as follows:
 

 The standard announced in
 
 Morales
 
 requires a more rigorous analysis of the level of risk created by the change in law. When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule’s practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule.... In the case before us, respondent must show that as applied to his own sentence the law created a significant risk of increasing his punishment. ... This remains the issue in the case, though the general operation of the Georgia parole system may produce relevant evidence and inform further analysis on the point.
 

 Id.
 
 at 255, 120 S.Ct. 1362 (internal citations omitted). The Supreme Court subsequently found that the record before the lower court “contained little information bearing on the level of risk created by the change in law” and concluded that, on the record before it, it could not conclude that the new law increased the respondent’s
 
 *291
 
 punishment.
 
 Garner,
 
 529 U.S. at 256, 120 S.Ct. 1362. The Supreme Court stated that “[without knowledge of whether retroactive application of the [amended rule] increases, to a significant degree, the likelihood or probability of prolonging respondent’s incarceration, his claim rests upon speculation.”
 
 Id.
 
 at 256, 120 S.Ct. 1362. The Supreme Court further found as follows:
 

 The Court of Appeals erred in not considering the Board’s internal policy statement. At a minimum, policy statements, along with the Board’s actual practices, provide important instruction as to how the Board interprets its enabling statute and regulations, and therefore whether, as a matter of fact, the amendment to [the rule] created a significant risk of increased punishment. It is often the case that an agency’s policies and practices will indicate the manner in which it is exercising its discretion.
 
 [5]
 

 Id.
 
 at 256-57, 120 S.Ct. 1362. The Supreme Court relied heavily on the fact that the policy statement indicated that the parole board would only set subsequent parole hearing dates three or more years into the future when it was “ ‘not reasonable to expect that parole would be granted’ sooner” and that a prisoner could obtain an earlier hearing based on changed circumstances or new information.
 
 Id.
 
 at 249, 256-57, 120 S.Ct. 1362. Based on this policy, and the fact that the respondent had failed to demonstrate anything to the contrary, the Supreme Court found that the respondent had failed to show that the new law created a “significant risk of increased punishment.”
 
 Id.
 
 at 257, 120 S.Ct. 1362. Therefore, the Supreme Court reversed the decision of the Court of Appeals and remanded the case for further proceedings, including, if the lower court deemed it warranted, additional discovery on the part of the respondent so that he might be able to demonstrate that the new law created a significant possibility of increasing his punishment.
 
 Id.
 
 at 257, 120 S.Ct. 1362.
 

 ¶ 18. In addition to the above-discussed United States Supreme Court authority, the courts in Mississippi have also had occasion to examine the requirements of the Ex Post Facto Clause. In
 
 Post v. Ruth,
 
 354 So.2d 1111, 1112 (Miss.1978), the Mississippi Supreme Court addressed an ex post facto challenge regarding an amendment to the statute governing the amount of good time an inmate could earn. At the time the petitioner committed the crime and was convicted and sentenced to probation, the old statute was in effect. However, after the petitioner’s probation was revoked and he was committed to prison, the new law had taken effect and was applied to him.
 
 Id.
 
 In response to the
 
 *292
 
 petitioner’s ex post facto challenge, the court stated as follows:
 

 Appellant further contends that the amended act does not apply to him and that it amounts to an ex post facto law which increases the sentence and which denies him equal protection of the law. The purpose of the act is to encourage discipline. It provides that a distinction may be made in the treatment of offenders so as to encourage them to be orderly, industrious and obedient. The good time provided is contingent upon the good conduct of the prisoner, and misconduct ranging from minimal to serious may forfeit all earned good time. The earned time does not become vested until the prisoner is entitled to be discharged after receiving credit for good time.
 

 Id.
 
 at 1112-13. The court then discussed cases from other jurisdictions holding that earned time does not reduce an inmate’s sentence, but rather allows the inmate to serve the remainder of his sentence outside of the prison, and holding that earned time is a conditional rather than vested right.
 
 Id.
 
 at 1113-14 (quoting
 
 Miller v. Taylor,
 
 313 F.2d 21, 22 (10th Cir.1962);
 
 Douglas v. Sigler,
 
 386 F.2d 684, 686 (8th Cir.1967)). The court subsequently found no ex post facto violation, stating that the petitioner was credited with more earned time under the new statute than he would have been under the prior statute.
 
 Id.
 
 at 1114.
 

 ¶ 19. In
 
 Ross v. State,
 
 584 So.2d 777, 779 (Miss. 1991), the Mississippi Supreme Court considered the phrase “meritorious earned time” in a constitutional challenge and concluded that an inmate’s earning of “time” is a matter of “grace or privilege,” not a matter of right. Ross claimed his equal protection and due process rights were violated by the failure to award him earned time even though he had completed certain programs that he was told would make him eligible for earned time.
 
 Id.
 
 at 778-79. The court interpreted Mississippi Code Annotated section 47-5-142(1) and (2), which dealt with another form of earned time, and found that the accumulation of earned time would be deemed a matter of right if the Legislature had employed the word “shall” instead of “may” when it said that earned time “may” be awarded. However, since “may” was used, the correctional officials were vested with discretionary power to award earned time under certain conditions; therefore, receipt of earned time was not a right to which inmates were entitled.
 
 [6]
 

 Id.
 
 at 779.
 

 ¶ 20. In
 
 Puckett v. Abels,
 
 684 So.2d 671 (Miss.1996), the Mississippi Supreme Court addressed whether Mississippi Code Annotated section 47-5-138, which required that an inmate serve eighty-five percent of his or her sentence before being eligible for parole, applied to prisoners convicted before, but sentenced after, the new law’s effective date without constituting an ex post facto violation. Under the old law, prisoners were eligible for parole after serving twenty-five percent of their sentence, or they could obtain early release by way of the earned-time provisions by serving fifty percent of them sentence.
 
 Id.
 
 at 672. The
 
 Puckett
 
 court discussed
 
 Lindsey, Weaver,
 
 and
 
 Morales,
 
 stating:
 

 In
 
 Morales,
 
 the Court stated: “The ex post facto standard we apply today is constant: it looks to whether a given legislative change has the prohibited effect of altering the definition of crimes or increasing punishments.” Thus, the holding in
 
 Morales
 
 does not overrule
 
 *293
 

 Weaver, Lindsey,
 
 and
 
 Miller
 
 because the focus in those three cases were on the effect the new law had on the defendant.
 
 Morales
 
 does, however, sharpen the ex post facto inquiry by looking at whether the statute affected the prisoner’s actual term of confinement, rather than whether the statute had disadvantaged the defendant....
 

 Under
 
 Morales,
 
 “what legislative adjustments ‘will be held to be of sufficient moment to transgress the constitutional prohibition’ must be a matter of ‘degree.’ ” The
 
 Morales
 
 decision means that when an amendment does not retrospectively “change the sentencing range” applicable to an offense, but does make a procedural or other change, that may indirectly affect the length of time that a prisoner may serve, no violation of the Ex [P]ost [Fjacto Clause has occurred because of the possibility of such an indirect effect is “speculative and conjectural.” In other words the new law must have a direct effect on the sentence length.
 

 Id.
 
 at 676 (internal citations omitted). Applying the
 
 Morales
 
 test, the court found that the law was an improper ex post facto law.
 
 Id.
 
 at 678. The court reasoned that unlike
 
 Morales,
 
 the Mississippi law (1) affected a large class of prisoners; (2) completely eliminated the possibility of parole for the prisoners rather than just affecting the timing of suitability hearings; and (3) applied “automatically across the board” with no “specific inquiry or hearing” like in
 
 Morales. Id.
 
 at 677.
 

 ¶ 21. Finally, in
 
 Ross v. Epps,
 
 922 So.2d 847 (Miss.Ct.App.2006), this Court specifically addressed an ex post facto challenge regarding the amended Mississippi Code Annotated section 47-5-138.1. Ross was convicted of the sale of cocaine and was subsequently imprisoned and placed in trusty status pursuant to the old version of section 47-5-138.1.
 
 Id.
 
 at 848(¶ 1). After the statute was amended, Ross was informed that he would not be eligible for the thirty-day reduction permitted by the new statute; however, he would be eligible for the ten-day reduction allowed by the prior statute.
 
 Id.
 
 at 848^9(¶ 3). We rejected Ross’s ex post facto challenge, reasoning that because Ross had already earned trusty status, he was still eligible to receive the ten-day reduction; therefore, he was not deprived of any trusty time as a result of the new law.
 
 Id.
 
 at 849 — 50(¶ 6).
 

 ¶ 22. Based on the foregoing authority, in analyzing whether that the application of Mississippi Code Annotated section 47-5-138.1 to Gray is an ex post facto violation, we must begin with the test set forth by the Supreme Court in
 
 Morales
 
 and later clarified in
 
 Gamer.
 
 In order to show an ex post facto violation, Gray must demonstrate that application of section 47-5-138.1 creates “a sufficient risk of increasing the measure of punishment attached to the covered crimes.”
 
 Garner,
 
 529 U.S. at 250, 120 S.Ct. 1362. As the Supreme Court stated in
 
 Gamer,
 
 “[w]hen the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule’s practical implementation ... that its retroactive application will result in a longer period of incarceration than under the earlier rule.”
 
 Id.
 
 at 255, 120 S.Ct. 1362. Utilizing this test, we find that the trial court erred in summarily dismissing Gray’s motion; however, on the record before us, we cannot determine whether the application of Mississippi Code Annotated section 47-5-138.1 to Gray constitutes an ex post facto violation. Accordingly, we find that an evidentiary hearing is necessary to decide this issue.
 

 ¶ 23. In dismissing Gray’s motion without an evidentiary hearing, the trial court stated that the language of section 47-5-
 
 *294
 
 138.1 is permissive rather than mandatory; therefore, “the entitlement to earned time is not proscribed by the Legislature and, if it is ever to apply to an inmate, it is to apply to his benefit.”
 
 [7]
 
 The trial court reasoned that “[i]f the privilege of earned [time] had never been set forth by statute, the term of incarceration that the Petitioner faced would have been [seven] years barring the possibility of parole.” Therefore, the trial court concluded that the application of section 47-5-138.1 to Gray “in no way changed the elements of the crime for which he was charged or increased the amount of punishment that he would have to face according to the crime for which he was charged”; accordingly, there was no ex post facto violation.
 

 ¶ 24. Although we express no opinion as to whether the application of section 47-5-138.1 to Gray is an ex post facto violation, we cannot accept the trial court’s reasoning in this regard. It is not disposi-tive in this case that the length of Gray’s actual sentence was not increased. The
 
 Weaver
 
 Court recognized that “a prisoner’s eligibility for reduced imprisonment is a significant factor entering into both the defendant’s decision to plea bargain and the judge’s calculation of the sentence to be imposed,” and found that the application of a statute that reduced the number of gain-time credits that prisoners could accrue to prisoners whose crimes were committed prior to the effective date of the statute to be an ex post facto violation.
 
 Weaver,
 
 450 U.S. at 32-33, 101 S.Ct. 960;
 
 see also Lynce,
 
 519 U.S. at 445-46, 117 S.Ct. 891 (stating that the “removal of [early release] provisions can constitute an increase in punishment”). The State argues that
 
 Weaver
 
 is distinguishable from this case on the ground that the statute in
 
 Weaver
 
 required correction authorities to award gain-time to every prisoner who obeyed the rules, while section 47-5-138.1 states that an inmate who has been put in trusty status “may be awarded a trusty time allowance,” thereby placing the decision of whether to grant the allowance within the discretion of the Mississippi Department of Corrections. Miss.Code. Ann. § 47-5-138.1 (Rev.2004). The trial court also relied on the permissive language of section 47-5-138.1 in finding no ex post facto violation. However, as the Supreme Court stated in
 
 Gamer,
 
 “[t]he presence of discretion does not displace the protections of the Ex Post Facto Clause.”
 
 Garner,
 
 529 U.S. at 253, 120 S.Ct. 1362. Therefore, the fact that the award of trusty time is discretionary is not dispositive.
 

 ¶ 25. The State argues that because Gray was not in trusty status at the time the new law took effect, the application of the new law to him did not constitute an ex post facto violation. The State reasons that trusty status and, thus, trusty-earned time, was a “special designation that had to be earned.” Therefore, “no inmate, upon sentencing could reasonably expect to gain trusty status and thus any detriment or increase in punishment from retroactively excluding certain offenders from trusty status eligibility would be speculative and thus does not violate the ex post facto clause.” The State contends that “[a]t most, Gray would be entitled to a classification review to determine whether or not it is likely that he would have been
 
 *295
 
 granted trusty status at some point during his incarceration under the rules and policies in place at the time he committed his crimes.”
 

 ¶ 26. The
 
 Amicus Curiae,
 
 on the other hand, relies heavily on
 
 Weaver
 
 and cites the disadvantage to Gray in arguing that the application of section 47-5-138.1 to Gray constitutes an ex post facto violation.
 
 [8]
 
 The
 
 Amicus Curiae
 
 correctly argues that the retroactive removal of early release provisions can constitute an increase in punishment for the purposes of the Ex Post Facto Clause. It also argues that Gray was clearly disadvantaged by the application of section 47-5-138.1 in that he was not allowed to participate in the trusty program that would have been available to him were it not for the new law.
 
 Weaver,
 
 however, is distinguishable from the case at bar in that the prisoners in
 
 Weaver
 
 were automatically entitled to gain-time credit based on good behavior.
 
 Weaver,
 
 450 U.S. at 34-35, 101 S.Ct. 960. Similarly, as the State notes,
 
 Lynce
 
 is distinguishable on the ground that the prisoner in that case had already accumulated earned time and been released from prison.
 
 Lynce,
 
 519 U.S. at 446-47, 117 S.Ct. 891. In this case, prisoners are neither automatically granted trusty status nor automatically granted trusty-earned time once in trusty status. Moreover, Gray has not been placed in trusty status so as to be eligible to earn trusty time.
 

 ¶ 27. As discussed above, the pertinent question in this case is whether the application of section 47-5-138.1 creates “a sufficient risk of increasing the measure of punishment attached to the covered crimes.”
 
 Garner,
 
 529 U.S. at 250, 120 S.Ct. 1362. Based on the record before us, we simply cannot determine the answer to this question. At the time the new law took effect, Gray had not been placed in trusty status so as to make him eligible for trusty-earned time. In order to demonstrate an ex post facto violation with regard to the new law, it would have to be demonstrated that there was significant likelihood or probability that Gray would have been placed in trusty status and would have received a ten-day reduction for every thirty days served of his sentence. This showing would demonstrate that the new law created a “significant risk of prolonging [Gray’s] incarceration.” Gar
 
 ner,
 
 529 U.S. at 251, 120 S.Ct. 1362. As noted above, the fact that it is discretionary as to which prisoners are placed in trusty status and whether those prisoners are granted trusty time is not dispositive as to whether the application of the new law to Gray constituted an ex post facto violation. Nor was Gray required to have a vested right to trusty status or trusty-earned time in order to demonstrate an ex post facto violation.
 
 [9]
 

 See Weaver,
 
 450 U.S. at 29, 101 S.Ct. 960;
 
 Garner,
 
 529 U.S. at 253, 120 S.Ct. 1362.
 

 ¶28. The State relies on
 
 Wottlin v. Fleming,
 
 136 F.3d 1032, 1034 (5th Cir. 1998), in which the petitioner contended that he was told that, pursuant to pending legislation, if he completed a drug-abuse treatment program he would be eligible for early release. However, once the petitioner completed the program, he was told that a new regulation prohibited prisoners
 
 *296
 
 convicted of the crime he committed from being eligible for early release.
 
 Id.
 
 The Fifth Circuit found no ex post facto violation on the ground that the petitioner’s eligibility for the early release program was always subject to the discretion of the bureau of prisons.
 
 Id.
 
 at 1038. We, however, do not find
 
 Wottlin
 
 to be dispositive in this case due to the fact that it predated
 
 Gamer,
 
 which clearly states that the presence of discretion does not automatically indicate that the Ex Post Facto Clause has not been violated.
 
 Garner,
 
 529 U.S. at 253, 120 S.Ct. 1362. The State cites no authority handed down after
 
 Gamer
 
 supporting the proposition that the presence of discretion precludes an ex post facto challenge.
 

 ¶ 29. We acknowledge that it is Gray’s burden to demonstrate that the new law creates a significant risk of increasing his punishment. He argues in an affidavit submitted to this Court that he did not have to earn trusty time because it was given up front to all offenders convicted under Mississippi Code Annotated section 41-29-139, but he alludes to no evidence supporting this assertion. However, we feel compelled to note that at every stage of the administrative grievance process, Gray’s claim that he was entitled to the benefit of the prior section 47-5-138.1 was rejected based on the reasoning that he was unavailable for trusty status because he had been convicted of the sale of cocaine. This would seem to indicate that the Department of Corrections’ decision was based solely on the new version of section 47-5-138.1. Moreover, under the specific facts of this case, we fail to see how Gray could adduce the evidence necessary to support his claim, should it exist, without the opportunity for discovery as to the policies and procedures of the Department of Corrections as they pertain to the trusty program. As the Supreme Court found in
 
 Gamer,
 
 the internal policies and actual practices of an agency charged with administering a statute “provide important instruction as to how [the agency] interprets its enabling statute and regulations” and “[i]t is often the case that an agency’s policies and practices will indicate the manner in which it is exercising its discretion.” Gar
 
 ner,
 
 529 U.S. at 256, 120 S.Ct. 1362. In the case at bar, information that would be pertinent in the resolution of Gray’s claim would be as follows: (1) how the trusty program works; (2) what are the requirements for obtaining trusty status; (3) how many prisoners similarly situated to Gray are granted trusty status, i.e., is it, in actual practice, automatic as Gray claims, or what factors contribute to the decision; (4) when in trusty status, what are the requirements for trusty-earned time. Without this information, a court cannot determine whether Gray has been subjected to an improper ex post facto law. Accordingly, we strongly suggest that the trial judge exercise his discretion in granting discovery of these matters pursuant to Mississippi Code Annotated section 99-39-15 (Rev.2007).
 

 ¶ 30. Moreover, because of the complexity of the issues presented in Gray’s appeal and because the resolution of the issues could potentially affect a class of prisoners, we feel that justice would be best served if Gray, who is indigent, were provided appointed counsel for the eviden-tiary hearing. Although “a criminal defendant has neither a state nor federal constitutional right to appointed counsel in post-conviction proceedings,” the trial court is permitted to “appoint counsel to represent an indigent defendant in a PCR evidentiary hearing.”
 
 Nance v. State,
 
 766 So.2d 111, 114(¶ 12) (Miss.Ct.App.2000) (citing Miss.Code Ann. § 99-39-23(1) (Supp. 1999)). Therefore, as the decision lies within the discretion of the trial court, we strongly suggest that the trial court con
 
 *297
 
 sider whether Gray should be appointed counsel to represent him during the investigation and preparation, as well as at the evidentiary hearing pursuant to Mississippi Code Annotated section 99-39-23 (Rev. 2007).
 

 ¶31. Based on the foregoing, we find that the most proper resolution is to remand this case to the trial court for an evidentiary hearing addressing the issues discussed above. Should the trial court determine that the application of the amended Mississippi Code Annotated section 47-5-138.1 to Gray creates a significant risk of increasing Gray’s punishment, then the trial court should conclude that such application constitutes an ex post fac-to violation and order that Gray be deemed eligible to acquire trusty status and trusty-earned time under the prior version of section 47-5-138.1. Accordingly, we reverse the judgment of the trial court and remand this case for proceedings consistent with this opinion.
 

 ¶ 32. THE JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAMAR COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
 

 [1]
 

 . He was also fined $3,000 and ordered to pay $1,500 to the Lamar County Public Defenders Fund.
 

 [2]
 

 . The Criminal Appeals Clinic is headed by Professor Phillip Broadhead. Jennifer For-man, Melissa Graves, and Nakesha McQuirter, students from the Clinic, contributed to the
 
 Amicus Curiae
 
 brief. We thank them and Professor Broadhead for their assistance to the Court.
 

 [3]
 

 . The Supreme Court in
 
 Miller
 
 relied on the following language from
 
 Lindsey:
 

 Finding that retrospective application of this change was ex post facto, the Court determined that “we need not inquire whether this is technically an increase in the punishment annexed to the crime,” because "it is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive a sentence which would give them freedom from custody and control prior to the expiration of the 15-year term.”
 

 Miller,
 
 482 U.S. at 432, 107 S.Ct. 2446 (quoting
 
 Lindsey,
 
 301 U.S. at 401-02, 57 S.Ct. 797).
 

 [4]
 

 . The Supreme Court stated that the language in
 
 Lindsey
 
 and
 
 Weaver
 
 regarding whether the petitioner was disadvantaged was "unneces
 
 *289
 
 sary to the results in those cases.”
 
 Morales,
 
 514 U.S. at 506 n. 3, 115 S.Ct. 1597.
 

 [5]
 

 . The court of appeals stated:
 

 [T]he set of inmates affected by the retroactive change — all prisoners serving life sentences — is “bound to be far more sizeable than the set ... at issue in
 
 Morales
 
 "— inmates convicted of more than one homicide. The Georgia law sweeps within its coverage, the court continued, "many inmates who can expect at some point to be paroled,” and thus "seems certain to ensure that some number of inmates will find the length of their incarceration extended in violation of the Ex Post Facto Clause of the Constitution.”
 

 Garner, 529
 
 U.S. at 249, 120 S.Ct. 1362 (internal citations omitted). The court of appeals found that "the Board's policy permitted it to reconsider any parole denials upon a showing of a ‘change in circumstances' or upon the Board's receipt of 'new information.’ ” However, the court of appeals found this policy insufficient because "policy statements, unlike regulations!,] are unenforceable and easily changed, and adherence to them is a matter of the Board’s discretion.”
 
 Id.
 
 (citation omitted).
 

 [6]
 

 . We note that
 
 Ross
 
 did not involve an ex post facto challenge, which is likely the reason the court did not discuss
 
 Weaver. •
 

 [7]
 

 . We note that Gray’s motion was styled as a motion to clarify his sentence, not a motion for post-conviction relief. Nonetheless, the trial court found that Gray’s motion substantially complied with the requirements of Mississippi Code Annotated section 99-39-9 (Rev.2007), which sets forth the items that must be included in a motion for post-conviction relief. However, Gray’s motion does not meet the technical requirements of section 99-39-9; regardless, the State does not challenge the trial court’s finding in this regard on appeal.
 

 [8]
 

 . We note that although the
 
 Morales
 
 Court stated that whether the offender is "disadvantage[d]” is not the appropriate inquiry in analyzing whether an ex post facto violation has occurred. The Supreme Court itself returned to this inquiry in
 
 Lynce,
 
 which was decided after
 
 Morales.
 

 [9]
 

 . It is for this reason that the State's reliance on
 
 Post,
 
 which held that earned time does not become a vested right until the prisoner becomes entitled to be released due to the earned time, is misplaced.