IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 7, 2025 Session

## STATE OF TENNESSEE v. ROBIN LEE TEAGUE

**Appeal from the Circuit Court for Henry County**
**No. 2022-CR-16899          Bruce I. Griffey, Judge**

_____

### No. W2024-01480-CCA-R3-CD

_____

The Defendant, Robin Lee Teague, pleaded guilty to one count of sexual exploitation of a minor for possessing material that depicted a minor engaged in sexual activity, a B felony based on his possession of more than 100 images, and two counts of aggravated sexual exploitation of a minor for exchanging material that included a minor engaged in sexual activity, a Class C felony. The plea agreement contemplated the trial court determining the sentence, and it sentenced him to twelve years for the B felony and six years for each of the C felonies. The trial court then ordered that all the sentences run consecutively to each other for a total effective sentence of twenty-four years, to be served at 100%. On appeal, the Defendant asserts that the trial court improperly ordered consecutive sentencing, in part because it used Tennessee Code Annotated section 40-35-115(b)(10) to enhance his sentence, which he asserts is forbidden by the *Ex Post Facto* Clause of the United States Constitution. After review, we conclude that the trial court incorrectly applied 40-35-115(b)(10) to order consecutive sentences. Therefore, we affirm the trial court's judgments of conviction but remand the case for a new sentencing hearing during which the trial court will reconsider whether consecutive sentencing is appropriate.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the court, in which TIMOTHY L. EASTER and JOHN W. CAMPBELL, SR., JJ., joined.

Benjamin Hunter Perry, Nashville, Tennessee, for the appellant, Robin Lee Teague.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; J. Neil Thompson, District Attorney General; and Courtney Morgan Crocker, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

# I. Facts

This case arises from a 2019 FBI sting operation involving computer communications that included child pornography and sexual abuse. In February 2020, law enforcement executed a search warrant for the Defendant's home and electronic devices during which they found over 100 images classified as child pornography. The Henry County Sheriff's Department ("HCSD") did not arrest the Defendant until November 14, 2022. The grand jury indicted the Defendant, as amended, for one count of sexual exploitation of a minor in violation of Tennessee Code Annotated section 39-17-1003(a) for his possession of images that were classified as child pornography. This count is a Class B felony based upon his possession of more than 100 images. The amended indictment also included two counts of aggravated sexual exploitation of a minor in violation of Tennessee Code Annotated section 39-17-1004(a)(1) for his promoting videos where a child is engaging in a sexual act. These offenses are Class C felonies.

## A. Guilty Plea Hearing

The Defendant entered a plea of guilty to three charges. At the guilty plea hearing, the trial court summarized the charges as follows:

> [Count I] between December 19th through February 20th . . . of 2020, [the Defendant] did knowingly possess more than one hundred individual images, material, or a combination of images and material that included a minor engaging in sexual activity or simulated sexual activity that is patently offensive thereby committing the offense of sexual exploitation of a minor in violation of Tennessee Code Annotated § 39-17-1003(a) against . . . .
>
> Count II charged the Defendant . . . that on or about October 19th, 2019 . . . did knowingly and intentionally promote a video in which a minor is engaging in sexual activity in violation of Tennessee Code Annotated § 39-17-1004(a) [constituting the offense of aggravated sexual exploitation of a minor].
>
> . . . .
>
> [Count III] on or about December 18th, 2019 . . . did knowingly or intentionally promote a video in which a minor is engaging in a sexual activity, in violation of Tennessee Code Annotated § 39-17-1004 (a), constituting the offense of aggravated sexual exploitation of a minor . . . .

2

The trial court ensured that the Defendant understood the rights he was waiving by entering his guilty plea, that he was not under the influence of any substance, and that he was freely entering his guilty plea.

The trial court stated that the Defendant had no prior criminal history, so he would be a Range I offender. The court informed the Defendant that his sentencing range for the B felony was not less than eight or more than twelve years and that the sentencing ranges for the C felonies were three to six years. The court told the Defendant that, by statute, the Defendant would have to serve 100% of his sentence but that his sentence could be reduced by fifteen percent for good behavior. The trial court informed the Defendant that he would lose his right to vote and be required to register as a sex offender.

The Defendant agreed there was a factual basis upon which the charges were based, and he expressed his desire to enter a plea of guilty to each of the three charges. The trial court accepted his guilty pleas.

**B. Sentencing Hearing**

The State filed a notice of enhancement factors, and the Defendant filed a notice of mitigating factors. Eric McCraw, a Special Agent with the Federal Bureau of Investigation ("FBI"), specialized in crimes that involved "child sexual abuse material" ("CSAM"). Pertaining to this case, in 2019, he received an investigative lead from the FBI office in Springfield, Illinois. They informed Agent McCraw that an undercover agent in their office had been communicating with the Defendant, both online and by telephone, to arrange for the Defendant to travel to Springfield to engage in sexual acts with someone whom he believed to be a minor child. The communications indicated that the Defendant had made it to Illinois but had gotten "scared," so the meeting never occurred. Also during the course of the communications, the Defendant had transmitted CSAM to the undercover FBI agent. When it became apparent that the in-person meeting was not going to occur, the Springfield, Illinois FBI office contacted the Jackson, Tennessee FBI office about the Defendant's actions.

Agent McCraw said he had access to all the communications that were sent between the Defendant and the undercover officer, including the images. The conversation between the undercover FBI agent and the Defendant initially started with the agent sending via text message pictures of a minor female the Defendant believed to be the undercover agent's daughter. The Defendant responded "That's f[***]ing hot. How old is she?" The undercover agent responded, "She's eight." The Defendant responded: "Nice age. Have you penetrated her?," asking if the undercover agent had sexually penetrated his own daughter. The agent responded "yes, I have. It was so tight."

3

The Defendant also sent the agent a CSAM of an eight-year-old girl in a bathing suit and said, "I've wanted to fuck that girl so bad." The Defendant also sent an image of a young, prepubescent female holding an erect male's penis with what appears to be ejaculate on the child's face. In another image a small child, six to eight years of age, was sitting in a vehicle clothed. She wore pigtails and had what appeared to be ejaculate on her face. The Defendant sent a message saying, "If you only [knew] the stuff I have. I do jack off to it at sometimes. I even snuck and watched it right before f[***]ing my wife." The Defendant continued, "I love my wife dearly, but I'm a pervert, I guess."

In order to determine his identity, the undercover agent asked the Defendant to send him a picture of his hand. In the photograph, the Defendant's face can also be seen, as well as a jacket that law enforcement later recovered from the Defendant during the execution of a search warrant.

Other photos sent by the Defendant included two small, young female children naked from the waist up sitting on a couch. The agent responded, "Do you have their little p[***]ies too?" The Defendant responded, "I'm looking." He then sent a forty-five second video of a very young female child, between two and four years of age, being sexually penetrated by an adult male penis. In the accompanying message, the Defendant said, "Hope you like the vid."

After the scheduled meeting between the undercover agent and the Defendant did not occur, the agent asked the Defendant if he actually traveled to Illinois. The Defendant said "Honestly, yes, but I wasn't at the hotel. I'm sorry. Just freaked myself out, I guess."

In another series of messages, the Defendant sent the agent multiple photographs of clothed children that the Defendant said he knew. The agent asked how he knew the girls, and the Defendant responded "We are friends with parents. They always come over to swim." The agent responded, "That's sexy." The Defendant said, "Yes, very. Get to accidentally touch a lot in summer." The agent said, "That's perfect. You ever sneak any other pics?" The Defendant said, "All the time."

The Defendant sent another picture of a female, who he said was seventeen, from the waist down. He said that he was "trying to get a picture of her p[***]y." The Defendant indicated that he had several SD cards of CSAM and that he stored most of his material in a MEGA cloud. MEGA is not a US-based application and is commonly used in CSAM cases.

In later messages, the Defendant said he "stroked off looking at [the undercover agent's alleged daughter]. Shot huge load." He indicated that he could not make the trip

4

to Illinois and risk getting caught. He expressed understanding that the undercover agent could not send proof but said that it was risky for them both.

Agent McCraw identified material obtained from a search of the Defendant's phone. There was an indication that some of the material on the phone was transferred from an SD card, which comported with the Defendant's messages. Also on the phone was a picture of several sex toys on a pillow. Law enforcement officers found items matching those in the picture during the execution of the search warrant. Officers found the bathing suit picture on the phone, and it indicated it was transferred from an SD card. There were other CSAM pictures on the phone, some showing a minor child with the tip of an erect penis in her mouth. The more than 100 images, all accessed through an SD card, showed various minor children involved in sex acts, oral sex, digital penetration, and penetration with what appears to be an adult male penis.

During cross-examination, Agent McCraw agreed that the messages occurred between a trained FBI agent and the Defendant. He clarified that the Defendant was not communicating with a minor or someone he believed to be a minor. The Defendant's only actual contact with a minor in this case was his admission about "accidentally" touching minor children who came over to his house. His wife confirmed that the pictures that the Defendant had provided to the undercover agent were, in fact, of children that were frequently in their home.

The agent agreed that the actual age of the girl depicted was unclear in the picture of the alleged seventeen-year-old's lower body. He relied upon what the Defendant said in his accompanying text message. Agent McCraw also said that there was no additional evidence, beyond the Defendant's statement, that the Defendant actually had traveled to Illinois.

The agent said that, when the Defendant sent the image of the sex toys to the undercover agent, he sent an accompanying text message indicating his desire to use those toys on the agent's daughter. The agent agreed that there was no evidence that the Defendant created the images he sent to the agent, aside from the one of the alleged seventeen-year-old.

During redirect examination, the agent testified that the images involved multiple victims.

The Defendant offered medical history, character letters, and asked the trial court to take notice of the many people who had come to the sentencing hearing to support the Defendant.

5

The Defendant then called Sheri Mestan Bochantin, who described how the Defendant had cared for his grandmother-in-law. She said he was "extremely caring." She said that, even before being arrested, the Defendant had never denied the allegations and had sought treatment and help for himself. She said he was genuinely remorseful.

Carlton Gerrell, the Defendant's pastor, testified that he had watched the Defendant go through a "true conversion" since 2019 when these events occurred.

The trial court considered the mitigating factors. It rejected that the Defendant's conduct neither caused nor threatened serious bodily injury. It explained that the very nature of child pornography and the act of possessing it creates a marketplace for it, which leads to human trafficking and child pornography production. The trial court also rejected that the Defendant lacked substantial judgment when committing the offense. He noted that the Defendant was a high school graduate who went into the military and subsequently owned his own business.

Upon questioning by the trial court, Agent McCraw said that the Defendant had never given law enforcement the SD card that contained all his images or given them access to his MEGA cloud that his messages indicated housed CSAM material.

The trial court rejected the mitigating factor that the Defendant was suffering from mental/physical conditions that impacted his culpability for the offenses. The trial court found that the Defendant had a calculated purpose in obtaining these illegal materials and that there was a clear indication he knew the images were illegal. They were obtained for his own personal sexual gratification.

The trial court similarly rejected the mitigating factor that the circumstances were so unusual that it was unlikely that a substantial attempt to violate the law motivated the Defendant's conduct. The trial court noted that without full review of all the images, of the material that was kept on MEGA cloud, it required speculation to determine the circumstances of the offense.

As to enhancement factors, the trial court agreed that the offense involved more than one victim. *See* T.C.A. § 40-35-114(3). It found applicable that this offense was committed to gratify the Defendant's desire for pleasure and excitement, as evidenced by the text messages in which the Defendant discussed pleasuring himself while viewing the photographs and videos. *See* T.C.A. § 40-35-114 (7).

The Defendant offered a statement to the trial court expressing remorse and saying that he had changed. He asked for leniency.

The trial court found:

It's the decision of the Court that for count I, sexual exploitation of a minor involving more than one hundred images, the State has filed two provisions for sentencing enhancement; the minimum is eight years, the maximum is twelve years. The Court agrees that the appropriate disposition and enhancement of that sentence should be twelve years. That'll be statutorily mandated to be served at one hundred percent.

Count II charges you with aggravated sexual exploitation of a minor, a Class C Felony, in violation of § 39-17-1004, that carries a minimum of three years, a maximum of six years. The State has then filed enhancement factors on that. The Court agrees with the State that enhancement factors are appropriate. The Court feels the appropriate sentence for that offense is six years, that's statutorily mandated to be served at one hundred percent.

Count III charges you with aggravated sexual exploitation of a minor involving a Class C Felony, in violation of Tennessee Code 39-17-1004. It carries a three- to six-year sentence as a Range I offender and the State has filed sentence enhancement factors, which the court agrees is appropriate regarding that count. And the appropriate disposition on that count should be six years, and that has to be served statutorily at one hundred percent.

[Defendant], the difficulty for the Court is that it's human nature for men to be attracted to fully-developed grown women. For an individual to be sexually attracted to and gratified by the images of prepubescent children and engaging in horrendous sexual activity with them is indicative to the Court that you have a severe mental defect. I'm not a psychologist, I can't prescribe that. I don't think current medicine for psychiatry has any – has the ability to reach inside the mind to determine what's wrong with the human mind that drives an individual to be sexually attracted to children.

It is the experience of the Court, based upon my own experience as a defender on that, as a prosecutor regarding these cases, and life in general, that it's difficult to fix a mental defect of this severity. And the Court finds that based upon the evidence and testimony submitted by Agent McCraw, there is grave, grave concern that you are a sexual predator and that you are looking for opportunities to take advantage of minors if the opportunity arises. The Court's especially concerned of the comment you made whether you feel it's truthful or not, the Court has to take your statements with some

7

measure of credibility, that you sought opportunity to grope and grab the other children that appeared at your swimming pool, if the opportunity arises.

Because of this the Court feels you're a danger to not just this community, but any community you're ever released into. The Court feels that the appropriate disposition is consecutive sentencing on all counts, pursuant to T.C.A. § 40-35-115(b) (10). You're to be placed on the sex offender registry for life, you'll have sex offender supervision for life.

It is from these judgments that the Defendant appeals.

## II. Analysis

On appeal, the Defendant contends that the use of Tennessee Code Annotated section 40-35-115(b) (10) to order consecutive sentencing violates the *ex post facto* clause of the United States Constitution and violates clearly established Tennessee law. He notes that his offenses occurred in 2020 and that this statute did not go into effect until July 1, 2023. The Defendant asserts that the retroactive application of section 40-35-115 is prohibited by the Constitution. He further asserts that, when enacting this statute, the Legislature did not provide for retroactive application, and Tennessee law provides that when not specifically stated otherwise, new law is a rule for future cases. The Defendant asserts that the trial court abused its discretion when it ordered consecutive sentencing. The Defendant lastly argues on appeal that the trial court abused its discretion when it imposed the maximum sentence for each of the offenses.

The State counters that the Defendant did not raise either the Constitutional argument or the Tennessee law argument before the trial court, so those issues are waived. The State asserts that these issues are not applicable for plain error review because first, the Defendant did not ask for plain error review in his brief and second, no substantial right of the Defendant was adversely affected. The State goes on to note that there are other applicable bases upon which the trial court could have ordered consecutive sentencing. The State asserts that the trial court properly ordered the maximum length sentences and consecutive sentencing.

In his reply brief, the Defendant first asserts that we should review this issue *de novo*, but, in the event we find he waived *de novo* review, we should review the issue pursuant to the doctrine of plain error.

## A. Sentence Length

The Defendant contends that the trial court erred when it sentenced him to more than the presumptive minimum sentences. He asserts that the trial court improperly applied the enhancement factors and improperly declined to apply mitigating factors. He further contends that his sentence is not in furtherance of the Sentencing Act. The State counters that the trial court acted within its discretionary authority and did not wholly depart from the sentencing guidelines, as would be required for the Defendant to be entitled to relief.

Sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a "presumption of reasonableness." *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.* at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id*. at 707.

The misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from a trial court's sentencing decision. *Id*. A reviewing court should not invalidate a sentence on this basis unless the trial court wholly departed from the principles of the Sentencing Act. *Id.* So long as there are other reasons consistent with the purpose and principles of sentencing, a sentence within the appropriate range should be upheld. *Id.*

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. § 40-35-210 (2019); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential

9

or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2019).

We conclude that the trial court properly sentenced the Defendant. The trial court considered the relevant principles and sentenced the Defendant to twelve years for his sexual exploitation of a minor conviction and to six years for each of his aggravated sexual exploitation of a minor convictions. The trial court did not err when it applied the aforementioned enhancement factors, making the proper findings and considerations. *See* T.C.A. § 40-35-114(1) (2019). It further properly declined to apply the offered mitigating factors. The Defendant cannot show that the trial court wholly departed from sentencing principals when sentencing the Defendant to the maximum sentence within his range. The Defendant is not entitled to relief as to this issue.

## B. Preservation of Ex Post Facto Issue for Appellate Review

Appellate review generally is limited to issues that a party has properly preserved for review, which requires that the party raise the issue both in the trial court and on appeal. *See* Tenn. R. Crim. P. 51; Tenn. R. Evid. 103(a)-(b); Tenn. R. App. P. 3(e); 13(b), 27(a)(4), 36(a); *State v. Minor*, 546 S.W.3d 59, 65 (Tenn. 2018); *State v. Bledsoe*, 226 S.W.3d 349, 353-54 (Tenn. 2007). The obligation to preserve issues for appellate review applies to constitutional issues and issues of "any other sort." *Minor*, 546 S.W.3d. at 65 (citations omitted). Appellate review preservation requirements ensure that the defense and the prosecution are afforded an opportunity to develop fully their opposing positions on an issue, enable a trial court to avoid or rectify an error before a judgment becomes final, thereby serve to promote fairness, justice, and judicial economy by fostering the expeditious avoidance or correction of errors before their full impact is realized. *Id.*

In the case presently before us, the Defendant did not raise the issue of the trial court's *ex post facto* reliance on Tennessee Code Annotated section 40-35-115 (b)(10) to order consecutive sentences at sentencing, despite the parties discussing this statute directly. In the trial court, the State argued that this statute permitted consecutive sentencing in this case. The Defendant's counsel responded by arguing that the statute did not apply by its terms and did not raise the issue of the application of the statute violating *ex post facto* protections. We therefore conclude that the Defendant did not properly preserve this issue and it may only be reviewed if the doctrine of plain error applies.

## C. Plain Error Doctrine

The plain error doctrine affords appellate courts discretion to review unpreserved errors and grant relief when fairness and justice demand. *Bledsoe*, 226 S.W.3d at 354. The plain error doctrine in Tennessee was recognized at common law, *Bledsoe*, 226 S.W.3d

at 354, but is now expressed in Tennessee Rule of Appellate Procedure 36(b), which provides, in relevant part:

> When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal.

Tenn. R. App. P. 36(b); *see also Knowles*, 470 S.W.3d at 423 (discussing Tenn. R. App. P. 36(b)).

The doctrine of plain error applies when all five of the following factors have been established:

> (a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached;
> (c) a substantial right of the accused must have been adversely affected;
> (d) the accused must not have waived the issue for tactical reasons; and
> (e) consideration of the error must be "necessary to do substantial justice.

*State v. Page*, 184 S.W.3d 223, 230-31 (Tenn. 2006) (quoting *State v. Terry*, 118 S.W.3d 355, 360 (Tenn. 2003)) (internal brackets omitted). "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *Id*. at 231. When it is clear from the record that at least one of the factors cannot be established, this court need not consider the remaining factors. *State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000). The defendant bears the burden of persuasion to show that he is entitled to plain error relief. *Bledsoe*, 226 S.W.3d at 355.

The record clearly establishes what occurred in the trial court in this case. The arguments of the parties rely upon what occurred during the sentencing hearing, which was adequately transcribed and preserved for our review. The first element of plain error review is satisfied. *See Smith*, 24 S.W.3d at 282.

Next, we determine whether a clear and unequivocal rule of law has been broken. *Id*. The trial court based consecutive sentencing on Tennessee Code Annotated section 40-35-155 (b)(10). That statute provides that:

> (a) If a defendant is convicted of more than one (1) criminal offense, the court shall order sentences to run consecutively or concurrently as provided by the criteria in this section.

11

(b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

. . . .

(10) The defendant is convicted of two (2) or more offenses involving more than one (1) victim, irrespective of whether the multiple offenses were part of a single criminal episode, and the court finds that a separate consecutive sentence for each offense is in the interest of justice.

The Defendant contends that the application of this code section, enacted after his offenses occurred, is a violation of Constitutional protections against the *ex post facto* application of laws. The Defendant's offenses occurred in 2020, and this statute was enacted July 1, 2023.

Both the federal and state constitutions prohibit *ex post facto* laws. The United States Constitution has two clauses containing the prohibition, one aimed at Congress—Article 1, section 9, clause 3—and the other aimed at the States—Article 1, section 10, clause 1, which provides that "[n]o State shall . . . pass any . . . ex post facto Law." The Tennessee Constitution in Article 1, section 11 states, "That laws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal, are contrary to the principles of a free Government; wherefore no *Ex post facto* law shall be made." The animating principle of the prohibition against *ex post facto* laws is basic fairness, as the United States Supreme Court explained in *Peugh v. United States*:

> Our holding today is consistent with basic principles of fairness that animate the *Ex Post Facto* Clause. The Framers considered *ex post facto* laws to be "contrary to the first principles of the social compact and to every principle of sound legislation." The Federalist No. 44, p. 282 (C. Rossiter ed. 1961) (J. Madison). The Clause ensures that individuals have fair warning of applicable laws and guards against vindictive legislative action. *See Weaver v. Graham*, 450 U.S. 24, 28-29, 101 S. Ct. 960, 67 L.Ed.2d 17 (1981) . . . . Even where these concerns are not directly implicated, however, the Clause also safeguards "a fundamental fairness interest . . . in having the government abide by the rules of law it establishes to govern the circumstances under which it can deprive a person of his or her liberty or life." *Carmell[ v. Texas*, 529 U.S. 513, 533, 120 S. Ct. 1620, 146 L.Ed.2d 577 (2000)].

569 U.S. 530, 543 (2013).

"In determining whether an *ex post facto* violation exists in the context of sentencing, the critical question under both the United States and Tennessee Constitutions is whether the law changes the punishment to the defendant's disadvantage, or inflicts a greater punishment than the law allowed when the offense occurred." *State v. Pearson*, 858 S.W.2d 879, 883 (Tenn. 1993). The determination is made by comparing the standard of punishment prescribed by each statute, rather than the punishment actually imposed. *Id.* (citing *Lindsey v. Washington*, 301 U.S. 397 (1937); *Stinson v. State*, 208 Tenn. 159, 344 S.W.2d 369 (1961)). Applying a law that inflicts the same or a lesser punishment raises *no ex post facto* concerns. *Id.* (citations omitted).

In this case, this statute, enacted after the Defendant's offenses, was used by the trial court to order consecutive sentencing, which doubled the Defendant's prison sentence. We conclude that the trial court's implementation of this statute changed the punishment to the Defendant's disadvantage and inflicted upon him a greater punishment. As such, the application of this statute went against fundamental fairness and violated Constitutional provisions against *ex post facto* laws. Accordingly, a clear and unequivocal rule of law has been breached, and the second factor required for plain error review is met.

The State contends that the Defendant cannot show the third factor required for plain error review, *i.e.* that a substantial right has been adversely affected. It posits that there were other applicable statutory provisions upon which the trial court could have relied on to order consecutive sentencing. While other statutory considerations may apply, we refrain from speculating about whether the trial court found those statutory provisions applicable. Instead, we remand this case for a new sentencing hearing, during which the trial court can make appropriate findings about whether any other applicable statutory provisions support a finding for consecutive sentencing.

As to the final two requirements of plain error review, we conclude that it is clear from the record that the Defendant did not waive the issue for tactical reasons and that consideration of this error is "necessary to do substantial justice." The Defendant was ordered to serve twelve years, and the *ex post facto* statute was used to order him to serve an additional twelve years, for a total effective sentence of twenty-four years. The Defendant should be sentenced pursuant to the sentencing statutes that were the law at the time of his offense. Upon remand, the trial court will consider those applicable sentencing statutes to determine whether consecutive sentencing is appropriate.

In summary, we conclude that the Defendant has established the criteria necessary to obtain relief under the plain error doctrine, and we exercise our authority to grant him a new sentencing hearing during which the trial court will consider the applicable criteria to determine whether consecutive sentencing is appropriate.

13

## III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgments, but we remand the case for a sentencing hearing during which the trial court will consider the issue of consecutive sentencing without consideration of Tennessee Code Annotated section 40-35-115 (b)(10).

_____ s/ *Robert W. Wedemeyer*__
ROBERT W. WEDEMEYER, PRESIDING JUDGE

14